# United States Court of Appeals
## For the First Circuit

No. 01-1400

UNITED STATES OF AMERICA,

Plaintiff, Appellee,

v.

MARÍA DEL CARMEN VENTURA-MELÉNDEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]
[Hon. Aida M. Delgado-Colón, U.S. Magistrate Judge]

Before

Torruella, Circuit Judge,
Kravitch,* Senior Circuit Judge,
and Lynch, Circuit Judge.

Linda Backiel, for appellant.
Francis J. Bustamante, Special Assistant U.S. Attorney, with whom Guillermo Gil, United States Attorney, Jorge E. Vega-Pacheco, Assistant U.S. Attorney, Chief, Criminal Division, and Anthony Chávez, Special Assistant U.S. Attorney, were on brief, for appellee.

December 19, 2001

---

* Of the Eleventh Circuit, sitting by designation.

**TORRUELLA, <u>Circuit Judge</u>.** Defendant María del Carmen Ventura-Meléndez ("Ventura" or "defendant") appeals her conviction for trespassing on a United States military installation. She asserts numerous grounds for appeal, all of which we find unavailing. We therefore affirm her conviction.

## I.   BACKGROUND

Ventura, a native of Vieques, Puerto Rico, was arrested on June 1, 2000 on a beach in Vieques during a peaceful protest against the Navy's continuing use of portions of the island for military maneuvers. The beach is part of the Naval installation at Camp García and sits approximately 200 yards from the live impact area designated for live-fire artillery and bombardment exercises. Approximately thirty-one people, all of whom were engaged in acts of civil disobedience, were arrested at the same time and place.

Ventura was charged, in a single-count information filed on July 17, 2000, with violation of 18 U.S.C. § 1382. The district court conducted a one-day bench trial and found Ventura, along with her two co-defendants, guilty of the one count charged. The district court then sentenced the defendant to one year of unsupervised probation, with a special condition that she not enter any part of the Navy's closed base at Camp García without permission, and assessed a fine in the amount of ten dollars.

## II.  ANALYSIS

The federal trespassing statute under which Ventura was convicted provides, in relevant part:

> Whoever, within the jurisdiction of the United States, goes upon any military, naval, or Coast Guard reservation, post, fort, arsenal, yard, station, or installation, for any purpose prohibited by law or lawful regulation;
> . . .
> Shall be fined under this title or imprisoned not more than six months, or both.

18 U.S.C. § 1382 (1994). The statute, in essence, prohibits persons from "enter[ing] military reservations that are closed to them, provided they have notice or knowledge that their entry is prohibited." United States v. Parrilla-Bonilla, 648 F.2d 1373, 1378 (1st Cir. 1981).

Ventura argues three basic grounds for appeal. First, she contends that the district court improperly admitted a "Certificate of Non-Existence of Record" that purported to show that she was not among those with permission to enter Camp García on the day of her arrest. Second, she argues that the evidence was insufficient as a matter of law to show that her presence on the beach constituted entry upon lands reserved by the Navy. Lastly, she argues that the district court erroneously failed to disqualify Navy personnel from acting as Special Assistant United States Attorneys. We address each of her appeal arguments in turn.

**A. Admission of the Certificate of Non-Existence of Record**

Shortly before trial, Ventura filed a motion in limine to exclude from evidence a Certificate of Non-Existence of Record ("CNER") signed by Lieutenant Commander Neftalí Pagán ("LC Pagán"). The CNER stated that a diligent search of the records containing the names of those with permission to enter Camp García on the day in question had been conducted, and that the search revealed no record or entry identifying Ventura. The document was introduced to show that Ventura was not authorized to be on the property controlled by the Navy when she was arrested. LC Pagán did not testify at trial. Ventura's motion to exclude the CNER was denied from the bench on the date of trial, without opinion. Her objection was renewed and overruled during trial.

### 1. Application of Rule 803(10)

Ventura first disputes whether the district court correctly admitted the CNER in accordance with Federal Rule of Evidence 803(10). "[A] trial court enjoys considerable discretion in connection with the admission or exclusion of evidence." Udemba v. Nicoli, 237 F.3d 8, 15 (1st Cir. 2001). Consequently, we review the district court's application of Rule 803(10) for an abuse of discretion. Id.

Subject to the limitations of Rule 803(10), an out-of-court statement is admissible to prove the absence of a public record or entry, even where the declarant is available as a witness. Evidence admitted pursuant to Rule 803(10) must meet the following criteria:

> To prove the absence of a record, report, statement, or data compilation, in any form, or the nonoccurrence or nonexistence of a matter of which a record, report, statement, or data compilation, in any form, was regularly made and preserved by a public office or agency, evidence in the form of a certification in accordance with rule 902, or testimony, that diligent search failed to disclose the record, report, statement, or data compilation, or entry.

Fed R. Evid. 803(10). Thus, any certificate declaring that a diligent search of public records failed to disclose a record or entry must comport with Rule 902, which governs the self-authentication of certain documents. Rule 902 provides, in relevant part, for the self-authentication of:

> A document bearing a seal purporting to be that of the United States, or of any State, district, Commonwealth, territory, or insular possession thereof, or the Panama Canal Zone, or the Trust Territory of the Pacific Islands, or of a political subdivision, department, officer, or agency thereof, and a signature purporting to be an attestation or execution.

Fed. R. Evid. 902(1).

Ventura challenges the district court's admission of the CNER under Rule 803(10) on several grounds. She claims: 1) that the underlying records of those with permission to enter Camp García are not "regularly made and preserved by a public office or agency"; 2) that the CNER does not bear the proper seal; and 3) that there is no proper "attestation" to the contents of the document. We find each of these arguments unpersuasive.

-6-

First, Ventura argues that, in order for the underlying records to be "regularly made and preserved by a public office or agency," their creation and maintenance must be legally mandated by statute or regulation. As such, defendant argues, the Navy's mere practice of making and retaining records of those with permission to enter Camp García does not satisfy the rule. However, we are unable to find such a limitation in the text of the rule. Had the drafters of the Rules of Evidence intended such a requirement, they were well aware of how it could be imposed. Cf. Fed. R. Evid. 803(6)(B) (providing for admission of records and reports of public offices or agencies setting forth "matters observed pursuant to duty imposed by law") (emphasis added). The plain text of the rule mandates only that the underlying records "be regularly made and preserved by a public office or agency"; we discern no error in the district court's conclusion that this limitation was satisfied by a proffer of evidence that logs of those with permission to enter the base are made and gathered on a daily basis.

Second, with regard to the adequacy of the seal, the CNER admitted by the district court clearly bears the raised seal of the Department of the Navy, a political subdivision of United States. We believe this satisfies the rule since, "[u]nder the approach of Rule 902(1), the seal of any executing officer or custodian will generally suffice." 5 Jack B. Weinstein & Margaret A. Berger, Weinstein's

Federal Evidence § 902.03[1], at 902-11 (3d ed. 1997) (footnote omitted).

Third, although LC Pagán did not use the precise term "attest," he stated that he "certifies and swears" that the contents of the CNER are accurate. The word "certify" means to "<u>attest</u> to being true," <u>Black's Law Dictionary</u> 124 (7th ed. 1998) (emphasis added), and thus easily supports the requirement of Rule 902(1) that the signature "purport[] to be an attestation." <u>See</u> <u>United States</u> v. <u>Mateo-Méndez</u>, 215 F.3d 1039, 1043-44 (9th Cir.), <u>cert. denied</u>, 531 U.S. 983 (2000); <u>see also</u> 5 <u>Weinstein's Federal Evidence</u> § 902.03[1], at 902-12 ("Rule 902(1) does not specify any particular form of attestation or execution."). We therefore conclude that the district court was well within its discretion in determining that the CNER met each of the requirements for admission under Rule 803(10).[1]

## 2. Confrontation Clause

Ventura also challenges the admission of the CNER on constitutional grounds, claiming that she was deprived of rights secured by the Confrontation Clause. We review the district court's ruling on this constitutional question <u>de</u> <u>novo</u>. <u>United States</u> v. <u>Rosario-Díaz</u>, 202 F.3d 54, 70 (1st Cir. 2000).

---

[1] Because we agree that the CNER was properly admitted as self-authenticating under Rule 902(1), we need not address defendant's contention that the certification is not a self-authenticating domestic public document not under seal within the meaning of Rule 902(2).

The Sixth Amendment provides, in relevant part, that "the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact."  Maryland v. Craig, 497 U.S. 836, 845 (1990).  When the government seeks to use an out-of-court statement against the accused, "courts must decide whether the [Confrontation] Clause permits the government to deny the accused his usual right to force the declarant 'to submit to cross-examination, the greatest legal engine ever invented for the discovery of truth.'" Lilly v. Virginia, 527 U.S. 116, 124 (1999) (plurality opinion) (quoting California v. Green, 399 U.S. 149, 158 (1970) (footnote and citation omitted)).

The hearsay exception and Confrontation Clause inquiries are not coterminous, "and evidence that is admissible under the former may still be inadmissible under the latter." United States v. Barone, 114 F.3d 1284, 1299 (1st Cir. 1997).  Nonetheless, the Confrontation Clause and the hearsay rules are both "generally designed to protect similar values . . . ." Bourjaily v. United States, 483 U.S. 171, 182-83 (1987) (citations and quotations omitted).  Thus, an otherwise admissible out-of-court statement also satisfies the requirements of the Sixth Amendment "if it bears adequate indicia of reliability."

-9-

Idaho v. Wright, 497 U.S. 805, 815 (1990) (internal quotations omitted).

Ventura argues that admission of the CNER fails the reliability requirement of the Confrontation Clause because the evidence neither falls within a "firmly rooted" hearsay exception, nor contains the particularized indicia of trustworthiness that would otherwise pass constitutional muster.[2] Because we conclude that the CNER demonstrates "particularized guarantees of trustworthiness" sufficient to satisfy the Confrontation Clause, see Ohio v. Roberts, 448 U.S. 56, 66 (1980), we need not decide whether Rule 803(10) embodies a "firmly rooted" hearsay exception.[3]

The requisite "'particularized guarantees of trustworthiness' must be shown from the totality of the circumstances." Wright, 497 U.S. at 819. Though "courts have considerable leeway in their consideration of appropriate factors," the relevant circumstances are those "that surround the making of the statement and that render the

_____

[2] Ventura does not appear to challenge introduction of the CNER on the basis that the government failed to demonstrate that LC Pagán was unavailable to testify. Cf. Barone, 114 F.3d at 1302 (noting that under certain circumstances the Confrontation Clause requires the government to demonstrate the declarant's unavailability).

[3] "Where the evidence is admitted under a 'firmly rooted' hearsay exception, reliability may be inferred without more." Barone, 114 F.3d at 1301 (citing Roberts, 448 U.S. at 66). "Admission under a firmly rooted hearsay exception satisfies the constitutional requirement of reliability because of the weight accorded longstanding judicial and legislative experience in assessing the trustworthiness of certain types of out-of-court statements . . . ." Wright, 497 U.S. at 817.

declarant particularly worthy of belief," such that "the test of cross-examination would be of marginal utility." Id. at 819-22. We therefore eschew the endorsement of a single "mechanical test," id. at 822, and look to the factors that best assay the reliability of the CNER. In this regard, the Supreme Court's plurality decision in Dutton v. Evans, 400 U.S. 74 (1970), provides helpful guidance. In Dutton, the Court articulated a four-prong analysis for testing the reliability of out-of-court statements, inquiring whether: 1) the statement contained no express assertions about past facts; 2) the declarant was in a position to have personal knowledge of the matters in the statement; 3) the possibility that the declarant's statement was founded on faulty recollection is extremely remote; and 4) the circumstances surrounding the making of the statement were such that the possibility of misrepresentation was unlikely. Id. at 88-89.

Here, the CNER admitted into evidence by the district court satisfies each of the Dutton factors. First, the document contains no assertion of past facts; rather, it relates only to the LC Pagán's contemporaneous search of existing records. Second, LC Pagán, whose duties include "control of access to the area known as Camp García" and the "authority to grant permission to particular individuals to enter Camp García," was well positioned to have personal knowledge of the matters in the CNER. Third, because a search of the records was conducted shortly before the creation of the CNER, the resulting

possibility of faulty recollection is minute. Lastly, the circumstances surrounding the making of the CNER make misrepresentation unlikely: the statement is sworn by an officer of the government in the discharge of his official duties; and the underlying records are created and maintained in a manner that bespeaks completeness and reliability.

Based on the Dutton factors, we conclude that the CNER is entitled to a dignity and trustworthiness on par with that recognized for out-of-court statements that fall within "firmly rooted" hearsay exceptions. See Wright, 497 U.S. at 821 ("[E]vidence possessing 'particularized guarantees of trustworthiness' must be at least as reliable as evidence admitted under a firmly rooted hearsay exception . . . .") (citation omitted). Our conclusion is further buttressed by courts that have determined that other certificates of the absence of a public record or entry have particularized guarantees of trustworthiness sufficient to satisfy the Confrontation Clause. See, e.g., United States v. Rith, 164 F.3d 1323, 1336-37 (10th Cir. 1999); United States v. Hutchinson, 22 F.3d 846, 852 (9th Cir. 1993); United States v. Metzger, 778 F.2d 1195, 1202-03 (6th Cir. 1985); United States v. Herrera-Britto, 739 F.2d 551, 552 (11th Cir. 1984) (per curiam). Thus, the admission of the CNER in the criminal trial did not violate Ventura's Sixth Amendment rights.

**B. Sufficiency of evidence challenge**

Ventura next assails the government's proof of entrance onto property reserved by the Navy. Ventura made these challenges in a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29. A Rule 29 motion will be denied "unless the evidence, viewed in the light most favorable to the government, could not have persuaded any trier of fact of the defendant's guilt beyond a reasonable doubt." United States v. Hernández, 218 F.3d 58, 64 (1st Cir. 2000) (quotation omitted), cert. denied, 531 U.S. 1103 (2001). We review the district court's denial of the motion de novo. United States v. Frigerio-Migiano, 254 F.3d 30, 33 (1st Cir. 2001).

Ventura argues that her unauthorized presence on the beach near the live impact area does not violate 18 U.S.C. § 1382 because the statute requires proof of both ownership and control of area in question. Although defendant concedes that the Navy owned and controlled the area up to the mean high-tide line of the beach, she maintains that the area seaward of that line was essentially fair game for her and the other protesters because Congress has recognized Puerto Rico's jurisdiction over its beaches, see 48 U.S.C. §§ 747-49. She argues further that, because the evidence at trial established only that she was arrested on the beach -- but not specifically landward of the mean high-tide line -- her conviction cannot be sustained.

As an initial matter, and despite the defendant's protestations to the contrary, we conclude that "[g]overnment ownership

-13-

of the property in question is not a requisite to violating Section 1382." United States v. Allen, 924 F.2d 29, 31 (2d Cir. 1991) (emphasis added) (citing United States v. McCoy, 866 F.2d 826, 830-32 (6th Cir. 1989)).

In Allen, the Second Circuit addressed this issue in the context of several defendants charged with violating § 1382 by swimming alongside a docked Trident nuclear submarine. In that case, the defendants argued that they could not have violated § 1382 because "they never intended to, and in fact did not, penetrate the boundary of the naval reservation . . . but rather only the 'security zone' of the waters surrounding that reservation." Id. at 30. The Allen court held that "entering the security zone is entering the naval reservation and is a violation of Section 1382." Id. The waters' designation as part of a security zone in accordance with federal regulations was sufficient to invest the Navy with "exclusive rights to occupy [the] area." Id.

The holding of the Second Circuit in Allen echoes that of the Ninth Circuit in United States v. Mowat, 582 F.2d 1194 (9th Cir. 1978), where the court stated that "even if the Navy did not possess a fee simple absolute title to the Island of Kahoolawe, the maintenance of the 'naval reservation' there suffices to support the convictions under 18 U.S.C. § 1382." Id. at 1208. In accord with these courts, we hold that, when the government does not own the land, § 1382 requires only

-14-

that the government demonstrate either a possessory interest in, or occupation or control of, the area reserved by the military.

Here we apply the occupation-and-control test and conclude, in agreement with the district court, that the government demonstrated that the area beyond the mean high-tide lines is under the occupation and control of the Navy for purposes of § 1382. Puerto Rico's jurisdiction over the shoreline was established subject to the control of the United States. Thus, a large swath of area extending beyond the shoreline of the beach was permissibly designated as part of a "danger zone" by federal regulation. See 33 C.F.R. §§ 334.2, 334.1480. These regulations allow the Navy to "occupy and control" these areas, and there was adequate testimony at trial demonstrating that the Navy has in fact exercised this power. The Navy has continuously used the adjacent area as a live impact zone for live-fire artillery and bombardment exercises and has continuously patrolled the beach for possible intruders. Furthermore, regulations establish that Camp García is a "closed" base, meaning that the public may not enter without permission of the commanding officer. See 32 C.F.R. §§ 770.35-770.40. The evidence therefore permitted the district court, acting as the fact-finder, to conclude beyond a reasonable doubt that Ventura had violated § 1382.

C. **Use of Special Assistant U.S. Attorneys General**

Finally, Ventura argues that the district court erred by not disqualifying Navy officers from serving as the prosecuting attorneys. Before trial, Ventura filed motions seeking to disqualify United States Navy officers from prosecuting the case. She argued that the Navy officers, appointed as Special Assistant United States Attorneys to prosecute the case, had an institutional conflict. More specifically, she avers that the ongoing controversy between the Navy and local residents over the live bombing exercises at Camp García prevented Navy personnel from serving as disinterested prosecutors. The district court denied Ventura's motions, and the government was represented at trial by Navy officers.

We addressed the identical argument in <u>United States</u> v. <u>Silva-Rosa</u>, No. 01-1347, slip op. at 4-6 (1st Cir. Dec. __, 2001), and need not recite the precise analysis set forth in that opinion. Suffice it say, however, that the defendant's argument must be rejected on the same rationale.

### III. CONCLUSION

For the reasons stated above, we **<u>affirm</u>**.