# United States Court of Appeals
## For the First Circuit

---

Nos. 01-1869, 01-1870, 01-1871
     01-1872, 01-1881, 01-1882
     01-1883, 01-1884

UNITED STATES,

Appellee,

v.

RAÚL MULERO-JOUBERT, IVÁN SOBRADO-SIERRA, CARLOS R. AGUIRRE-FLORES,
  ANGEL CARMONA-TAPIA, JOSÉ MOLINA-ENCARNACIÓN, JUAN SANTOS-CENTENO,
  CARLOS SANTIAGO-RIVERA, AND ANGEL LUIS CLASS-ALVARADO,

Defendants, Appellants.

---

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

---

Before

Selya, Circuit Judge,
Stahl, Senior Circuit Judge,
and Lynch, Circuit Judge.

---

Julie Ann Soderlund, with whom Guillermo Ramos-Luiña and Enrique Colon Santana, were on brief, for appellants.
Michael Hughes, Special Assistant United States Attorney, with whom Stella J. Song, Special Assistant United States Attorney, Jorge E. Vega-Pacheco, Assistant United States Attorney, and Guillermo Gil, United States Attorney, were on brief, for appellee.

**STAHL, Senior Circuit Judge**. Defendants-appellants challenge the district court's finding of guilt against them in one-count informations for trespassing on a military installation in violation of 18 U.S.C. § 1382. We reverse their convictions because the government did not prove an essential element of its case.

## I. BACKGROUND

Appellants were arrested by Navy officials on April 27, 2001, on Cayo Yayí, also known as Fisherman's Island, a small island about 75 feet off the shore of the live impact area[1] of the Camp García Naval Installation, which is located on the island of Vieques, Puerto Rico. On April 30, 2001, the government filed a one-count information against each of the appellants, charging them with entering, "knowingly and unlawfully," upon Camp García, "for any purpose prohibited by law or lawful regulation, that is, 32 C.F.R. Section 770.35 through 770.40,[2] without first having obtained permission from the Commanding Officer as required by the aforesaid regulations," in violation of 18 U.S.C. §

---

[1]The live impact area is a part of Camp García that receives bombs and ordnance in the course of military target practice.

[2]Sections 770.35 through 770.40 of Title 32 of the Code of Federal Regulations set up entry restrictions and entry procedures for enumerated naval installations and properties in Puerto Rico, including Camp García.

1382.  Section 1382 reads in relevant part as follows: "Whoever, within the jurisdiction of the United States, goes upon any military, naval, or Coast Guard reservation, post, fort, arsenal, yard, station, or installation, for any purpose prohibited by law or lawful regulation . . . [s]hall be fined under this title or imprisoned not more than six months, or both."  18 U.S.C. § 1382.

A bench trial was held on June 5, 2001.  During the trial testimony -- and at oral argument before us -- the government conceded that Fisherman's Island was not United States property, despite its proximity to Camp García.  At trial, however, the government introduced as evidence maps reflecting a "danger zone," established by 33 C.F.R. § 334.1470, which included the island within its boundaries.  A danger zone is "[a] defined water area  . . . used for target practice, bombing, rocket firing or other especially hazardous operations, normally for the armed forces," and "may be closed to the public on a full-time or intermittent basis, as stated in the regulations." Id. § 334.2(a).  The regulation creating the danger zone that includes Fisherman's Island specifies that "[i]t will be open to navigation at all times except when firing is being conducted."  Id. § 334.1470(b)(1).

The government also introduced evidence that, on the day of the arrests, Fisherman's Island was in a temporary "security zone," established by 66 F.R. 22,121 (published May 3, 2001), effective from

3 p.m., April 26, 2001 until 11:59 p.m., April 30, 2001. "A security zone is an area of land, water, or land and water which is so designated by the Captain of the Port or District Commander for such time as necessary to prevent damage or injury to any vessel or waterfront facility, to safeguard ports, harbors, territories, or waters of the United States or to secure the observance of the rights and obligations of the United States." 33 C.F.R. § 165.30(a). The regulations provide that "[n]o person or vessel may enter or remain in a security zone without permission of the Captain of the Port." Id. § 165.33(a). At trial appellants noted that 66 F.R. 22,121, although dated April 26, 2001, a day before their arrests, was published on May 3, 2001.

At the close of the prosecution's case, appellants raised a motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure, stating that the government had failed to present evidence of certain necessary elements of the offense as charged in the informations filed against them. Appellants argued in particular that the informations charged them with violation of 18 U.S.C. § 1382, for entering Camp García without authorization, but that the evidence presented only proved that they were on Fisherman's Island, not Camp García, at the time of their arrests. The court denied the Rule 29 motion and, after the defense rested without presenting any evidence,

proceeded to find the appellants guilty of trespass in violation of 18 U.S.C. § 1382. Thereafter, timely appeals were filed.

Before us, appellants essentially raise three arguments. The first is that Fisherman's Island was not part of a danger zone and/or security zone that was duly activated and in effect on April 27, 2001 and that the government therefore did not prove that it exerted control over Fisherman's Island sufficient to convict appellants of entering a naval installation, as section 1382 requires. Second, appellants argue that they did not have notice of the offense charged and therefore similarly could not be convicted under section 1382. Their third argument posits that, to the extent that the government has not been able to show that the United States exerted control over Fisherman's Island, the district court erred in denying appellants' Rule 29 motion, where the prosecution failed to prove any of the elements of the offense charged in the informations.

"We review the district court's construction of a federal statute de novo." United States v. Maxwell, 254 F.3d 21, 24 (1st Cir. 2001). On the record before us, we find that the government failed to prove that appellants had actual or constructive notice that Fisherman's Island was closed to public use on April 27, 2001, and that the district court therefore erred in holding that their presence violated section 1382. We accordingly reverse. Because we find that lack of notice in this case is sufficient to reverse appellants'

-5-

convictions, we reach the other issues raised by appellants only to the extent they are necessary to set the groundwork for our holding on notice.

## II. ANALYSIS

A conviction under 18 U.S.C. § 1382 "requires only that the government demonstrate either a possessory interest in, or occupation or control of, the area reserved by the military," and not actual government ownership of the area in question. United States v. Ventura-Meléndez, 275 F.3d 9, 17 (1st Cir. 2001).

It is now well-established under our case law that the existence of a duly promulgated danger zone, encompassing the area in question, is sufficient to show occupation and control of the area by the government. See United States v. Ayala Ayala, Nos. 01-2148, 01-2150, 01-2151, 01-2152, 2002 WL 723876, at *3-4 (1st Cir. Apr. 29, 2002); United States v. Zenón-Rodríguez, Nos. 02-1207, 02-1208, 2002 WL 729216, at *2-3 (1st Cir. Apr. 29, 2002); Ventura-Meléndez, 275 F.3d at 17. It is uncontested here that Fisherman's Island was included in the danger zone defined in 33 C.F.R. § 334.1470, and we therefore find that, on April 27, 2001, appellants "within the jurisdiction of the United States, [went] upon [a] . . . naval . . . installation," within the meaning of 18 U.S.C. § 1382.

The government further argues that 33 F.R. 22,121, the previously mentioned regulation establishing a temporary security zone

that incorporated Fisherman's Island and was in effect from 3 p.m., April 26, 2001 until 11:59 p.m., April 30, 2001, provided an additional and independent ground for finding that the government exerted control over the island during the dates in question.  See United States v. Allen, 924 F.2d 29, 31 (2d Cir. 1991) (holding that the designation of a security zone is sufficient evidence that the Navy "occupied and controlled" the waters in question).  In making this argument, the government concedes that 33 F.R. 22,121 was published on May 3, 2001, after the date on which appellants allegedly trespassed on Fisherman's Island, but contends that the regulation was nevertheless duly promulgated because it was exempt

from notice and comment rulemaking and advance publication, see 5 U.S.C. § 553, under the military and/or good cause exceptions of 5 U.S.C. § 553 (a)(1), (b)(B) and (d)(3).[3] Without resolving the question

---

[3]Section 553 reads in relevant part as follows:

(a) This section applies, according to the provisions thereof, except to the extent that there is involved --

    (1)a military or foreign affairs function of the United States

. . . .

(b) General notice of proposed rule making shall be published in the Federal Register . . .
Except when notice or hearing is required by statute, this subsection does not apply --

. . .

    (B) when the agency for good cause finds . . . that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

of whether the security zone in this case was properly promulgated --

or the question of whether it was sufficient here to prove occupation

and control by the Navy of Fisherman's Island -- we assume, arguendo,

that the security zone provided an additional way in which appellants

"within the jurisdiction of the United States, [went] upon [a] . . .

naval . . . installation," on April 27, 2001, within the meaning of 18

U.S.C. § 1382.  We move on to the question of notice.[4]

---

(c) After notice required by this section, the agency
shall give interested persons an opportunity to
participate in the rule making through submission of
written data, views, or arguments with or without
opportunity for oral presentation. . . .
(d) The required publication or service of a
substantive rule shall be made not less than 30 days
before its effective date, except --
. . .
> (3) as otherwise provided by the agency for
> good cause found and published with the
> rule.
. . .

[4]The government has additionally argued that Fisherman's
Island was closed to the public continuously, regardless of
whether there was live firing or a temporary security zone.  At
trial, three Navy personnel testified variously that the Navy
regularly patrolled and observed Fisherman's Island, that all
the offshore islands in close proximity to Camp García were
considered under the control of the U.S. Navy, and that the only
authorized access to Fisherman's Island was through Camp García.
(Appellants have argued in response that Fisherman's Island was
used by the public for fishing and recreation, although we do
not see evidence of this use in the record.)  We find that,
regardless of what the Navy's usual practice as to patrolling
Fisherman's Island or authorizing entry to the island may be,
the government cannot claim that the island was closed to the
public continuously, when it was undeniably within a danger zone
that is "open to navigation at all times except when firing is being
conducted."  33 C.F.R. § 334.1470 (discussed further in section A,

-8-

A. Constructive Notice

In order to establish a violation of section 1382, we must also find that appellants entered the naval installation "for any purpose prohibited by law or lawful regulation." 18 U.S.C. § 1382. "The requisite prohibited 'purpose' under section 1382 can consist of unauthorized entry itself. . . . On the other hand, when a section 1382 prosecution proceeds on the basis that the defendant has entered a restricted military reservation 'for the purpose of' unauthorized entry, we think it must be shown that the defendant had knowledge or notice that such entry was, in fact, prohibited." United States v. Parrilla Bonilla, 648 F.2d 1373, 1377 (1st Cir. 1981).

In this case, the regulation establishing the danger zone states that the zone "will be open to navigation at all times except when firing is being conducted." 33 C.F.R. § 334.1470. As we held in Ayala Ayala -- which dealt with the same danger zone regulation we analyze here -- "[t]o prove a violation of § 1382, then, the government was required to demonstrate that notice was given that the danger zone was closed to the public at the time of the arrests." Ayala Ayala, 2002 WL 723876, at *4.

Alternatively, assuming again arguendo that the security zone was duly promulgated and sufficient to establish control and occupation, the government needed to establish that appellants had

infra).

-9-

notice that a security zone was in effect on April 27, 2001, in order for us to conclude that appellants were on Fisherman's Island "for the purpose of unauthorized entry" in violation of section 1382.

The government here has not met the burden of showing that the defendants had actual or constructive notice that entry was prohibited, notice that could have been provided by prior notice of the live firing or of the designation of the security zone.  In Ayala Ayala, the record contained references to a "fishermen's notice," warning of upcoming military exercises within the danger zone and distributed around Vieques a week in advance, and to radio broadcasts over marine band radio alerting to the establishment of a temporary security zone (and thus also to firing within the danger zone).  Ayala Ayala, 2002 WL 723876, at *5.  In contrast, we find nothing in the record of the case before us that establishes notice that live firing would be conducted in the danger zone on April 27, 2001.[5]  See also Zenón-Rodríguez, 2002 WL 729216, at *4 (pointing to the existence of a routine weekly fishermen's notice, in evidence, as proof of constructive notice).  The government responds by contending that

_____

[5]We are aware that the date in question in Ayala Ayala, April 28, 2001, is only one day after the day on which appellants in this case allegedly trespassed on Fisherman's Island.  Although we thus acknowledge that the fishermen's notice and radio broadcasts discussed in Ayala Ayala more than likely cover the date on which appellants were arrested, this does not change the fact that the government, on the record in this case, failed to show that appellants had notice that their entry upon Fisherman's Island was prohibited.

33 F.R. 22,121, which established the temporary security zone, was sufficient to establish constructive notice, both as to live firing in the danger zone and as to the designation of the temporary security zone. The government's position is flawed. Even assuming again, as we have supra, that the regulation was legally promulgated, we cannot find that it provided notice as to the fact that Fisherman's Island was closed to the public on April 27. The regulation itself, published only on May 3, could have alerted the appellants neither to the fact that the danger zone was closed due to live firing on April 27 nor to the fact that a temporary security zone was in effect on April 27. Even if advance publication was not required to legally designate the security zone, we cannot accept that a post-dated regulation can provide constructive notice of its existence, particularly when other options for providing notice exist. See e.g., Ayala Ayala, 2002 WL 723876, at *5 (discussing radio broadcasts over marine band radio announcing the designation of a security zone). The government has the burden here of showing that, at the time of their entry on to Fisherman's Island, appellants understood or should have understood that their presence on Fisherman's Island was prohibited. It defies common sense to say that the government can prove such notice by pointing to a regulation published after the fact.[6]

---

[6]In so holding, we are fully aware of our precedent stating that "section 1382's knowledge or notice requirement may be satisfied by the publication of a regulation specifically

-11-

B. Actual Notice

Having failed to establish constructive notice, in a last-ditch effort, the government asks us to find that certain behavior and language by the appellants at the time of their arrest proves that they had actual knowledge that Fisherman's Island was closed to the public on April 27. In particular, the government points to the fact that the appellants chanted "Vieques, si, marina, no"[7] when they were picked up by Navy personnel. Whatever appellants' words may convey as to their purpose for being on Fisherman's Island, we cannot take their chant as proving that appellants had notice or knowledge that the island was closed to the public on April 27, 2001.

We hence hold that the government has not met its burden of showing, on the record in this case, that appellants had actual or constructive notice that their presence on Fisherman's Island was prohibited by law on the date of their arrests.

---

forbidding unauthorized entry." Maxwell, 254 F.3d at 25 (internal quotations omitted). In Maxwell, the regulations found to provide notice, 32 C.F.R. §§ 770.35-770.40, were duly promulgated, published, and in effect indefinitely at the time of the trespass. Maxwell thus did not anticipate the due process questions that arise if a post-dated rule establishing a temporary restriction on entry is held forth as providing notice of the prohibited act.

[7]This is translated as "Vieques, yes, Navy, no."

## III. CONCLUSION

For the foregoing reasons, the district court erred in convicting appellants under 18 U.S.C. § 1382.

<u>Reversed</u>.