Lisa Barrett v. Warden, NHSP        CV-03-317-JD  11/20/03  P

**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF NEW HAMPSHIRE**


<u>Lisa Barrett</u>

    v.                                     Civil No. 03-317-JD
                                        Opinion No. 2003 DNH 197

<u>Jane Coplan, Warden, New</u>
<u>Hampshire State Prison, et al.</u>


**O R D E R**

      Before the court is *pro se* plaintiff Lisa Barrett, an inmate

at the New Hampshire State Prison ("NHSP"), who has filed suit

pursuant to 42 U.S.C. § 1983 against a number of NHSP employees.

Barrett alleges that the defendants have violated her[1] rights

under the Eighth Amendment[2] by failing to adequately treat her

---

[1]The court recognizes that, although plaintiff is biologically male, it is painful to her to be referred to with a male pronoun.  Therefore, because it does not appear that referring to Barrett as "she" will impair the clarity of this Order, I will refer to Barrett as "she."  <u>See</u> <u>Farmer v. Perrill</u>, 275 F.3d 958, 959 n. 1 (10th Cir. 2001); <u>Schwenk v. Hartford</u>, 204 F.3d 1187, 1192 n. 1 (9th Cir. 2000); <u>Brown v. Zavaras</u>, 63 F.3d 967, 968 n. 1 (10th Cir. 1995) (stating practice of referring to litigants as the record suggests they prefer to be addressed); <u>but</u> <u>see</u> <u>Kosilek v. Maloney</u>, 221 F.Supp.2d 156, 158 n. 1 (D.Mass. 2002) (recognizing that courts have referred to biologically male transsexuals as "she" but finding that clarity of the memorandum required use of male pronoun).

[2]Barrett indicates that her complaint is based on federal constitutional law and state law.  Although she does not discuss

for serious medical needs while she has been incarcerated at the NHSP. As Barrett is proceeding both *pro se* and *in forma pauperis*, the complaint is before me for preliminary review. See United States District Court for the District of New Hampshire Local Rules ("LR") 4.3(d)(2). For the reasons stated herein, I order that the complaint be served on the defendants in their individual capacities. See id.; 28 U.S.C. § 1915(e)(2)(B). In a Report and Recommendation issued simultaneously with this Order, I recommend that any claims asserted against the defendants in their official capacities be dismissed.

## Standard of Review

In reviewing a *pro se* complaint, the court is obliged to construe the pleading liberally. See Ayala Serrano v. Lebron Gonzales, 909 F.2d 8, 15 (1st Cir. 1990) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) to construe *pro se* pleadings liberally in favor of the *pro se* party). "The policy behind affording *pro se* plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct

---

her state law claims, presuming that they are based on the same facts as the federal claims, I will exercise the supplemental jurisdiction of this Court and allow Barrett's state law claims to proceed at this time. See 28 U.S.C. § 1367.

2

cause of action, even if it was imperfectly pled." Ahmed v.

Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997), cert. denied,

Ahmed v. Greenwood, 522 U.S. 1148 (1998).

At this preliminary stage of review, all factual assertions

made by the plaintiff and inferences reasonably drawn therefrom

must be accepted as true. See Aulson v. Blanchard, 83 F.3d 1, 3

(1st Cir. 1996) (stating the "failure to state a claim" standard

of review and explaining that all "well-pleaded factual

averments," not bald assertions, must be accepted as true). This

review ensures that *pro se* pleadings are given fair and

meaningful consideration. See Eveland v. Dir. of C.I.A., 843

F.2d 46, 49 (1st Cir. 1988). Applying this standard, the facts

as related by Barrett are recounted here.

## Background[3]

Lisa Barrett is a NHSP inmate who suffers from gender

identity disorder ("GID"), otherwise known as transsexualism.[4]

---

[3]It is worth noting that the facts alleged by Barrett bear a
striking, and at times, **verbatim**, resemblance to those found by
the District of Massachusetts in Kosilek v. Maloney, 221
F.Supp.2d 156 (D.Mass. 2002).

[4]Transsexualism: "[A] disturbance of gender identity in
which the affected person has overwhelming desire to change
anatomic sex stemming from the fixed conviction that he or she is
a member of the opposite sex; such persons often seek hormonal

3

Barrett was born biologically male, but is psychologically and emotionally female. Prior to her incarceration, Barrett had lived as a female since the age of seventeen, and had cross-dressed at a much earlier age pursuant to her long-held belief that she is, in fact, a female.

In the early 1990s, prior to her incarceration, Barrett received female hormones from a physician. When she was incarcerated pretrial at the Belknap County House of Correction prior to her transfer to NHSP, the medical department there continued to provide Barrett with female hormones, resulting in some physiological changes, including minor breast development. Upon her intake to NHSP, Barrett was examined by a NHSP physician who stopped her hormone treatments. Barrett advised the NHSP medical staff of her transsexuality, but was denied treatment for that condition.

During the mid-1990s, Barrett was housed at the Secure Housing Unit at the NHSP. During that time, she made numerous attempts at both suicide and self-castration, both, she alleges, resulting from her untreated GID. Since October of 1997, Barrett

and surgical treatment to bring their anatomy into conformity with their belief." Dorland's Illustrated Medical Dictionary, (28th ed. 1994), at 1735.

4

states that she has lived in general population at the NHSP, and has attempted, to the extent possible, to modify her appearance and behavior in order to live as a woman.

On July 22, 2002, Barrett submitted a request slip to Warden Jane Coplan explaining that her GID presented a serious medical need and requesting appropriate treatment, including hormone treatment for a later sex reassignment surgery and the ability to purchase items available to female inmates. Barrett received a reply from Coplan advising that Coplan had no legal obligation to grant any of Barrett's requests. On August 9, 2002, Barrett replied to Coplan advising her of court rulings requiring that prisons provide treatment for inmates with GID. On August 12, 2002, Coplan requested documentation of legal precedent for Barrett's assertion. On August 14, 2002, Barrett reports that she provided Coplan with documentation supporting her legal position. On September 24, 2002, Coplan advised Barrett that she would not be allowed to dress as a woman at the NHSP because it would put her in danger of assault, and that she would not be allowed to be housed at the women's prison because she is a male inmate.

On July 22, 2002, Barrett sent a request slip to the NHSP

5

mental health department describing her emotional distress at having to live with male genitalia, and explicitly threatening to mutilate her own male genitalia. As a result of that slip, NHSP Nurse Practitioner Cathy Fontaine scheduled a mental health appointment for Barrett on August 19, 2002. Barrett submitted an additional request slip to the mental health department requesting treatment. On August 19, 2002, Barrett met with Fontaine and discussed her transsexualism and her desire to be treated for GID.

Fontaine provided the information she received from Barrett to NHSP physician David Freedman, a gynecologist. On September 20, 2002, Freedman responded, indicating that NHSP does not perform or approve sex reassignment surgery or pre-operative hormone treatment. On September 21, 2002, Barrett sent a request to Freedman addressing his desire to be evaluated for hormone therapy and to receive treatment for GID. On October 2, 2002, Freedman responded that sex reassignment is a lengthy process that involves a period of living in the community as a woman, and that such an option would not be appropriate in a prison setting and would therefore not be available to Barrett. Barrett was advised to pursue his GID treatment after he was released from

6

prison. Barrett also met with NHSP physician Richard Fellows a couple of times and discussed with Fellows her desire to be treated for GID. Barrett was twice scheduled for personality testing, but both times, the testing appointment was cancelled by NHSP staff.

Barrett contends that she has sought treatment for her transsexuality at NHSP since 1994. Prison officials, she claims were well aware of the risk she posed to either kill herself or to attempt to mutilate herself. Despite that, she was not provided with any psychological or other treatment by any medical professional experienced with GID. Barrett alleges that the blanket policy at the NHSP of not considering hormone or surgical treatment for people with GID, without regard to the individualized medical need presented by the individual patient suffering from the condition, prevented her from being considered for appropriate treatment for her serious medical needs.

Discussion

1.  <u>Inadequate Medical Care Claim</u>[5]

The Eighth Amendment protects prison inmates from prison

_____

[5]The claims as identified in this Order will be considered to be the claims in this case for all purposes. If the plaintiff objects to the identification of the claims herein, she must do so by proper objection or motion to amend her complaint.

7

officials acting with deliberate indifference to their serious medical needs. See Farmer v. Brennan, 511 U.S. 825, 831 (1994). To assert a viable cause of action for inadequate medical care, an inmate must first state facts sufficient to allege that the plaintiff has a serious medical need for which adequate care has not been provided. Farmer, 522 U.S. at 831; Rhodes v. Chapman, 452 U.S. 337 (1981); Estelle, 429 U.S. at 106. The inmate must then allege that a responsible prison official was aware of the need or of the facts from which the need could be inferred, and still failed to provide treatment. Id. A serious medical need is one that involves a substantial risk of serious harm if it is not adequately treated. Kosilek v. Maloney, 221 F.Supp.2d 156, 180 (D.Mass. 2002) (citing Farmer, 511 U.S. at 835-47). The First Circuit has defined a serious medical need as one "'that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Mahan v. Plymouth County House of Corr., 64 F.3d 14, 18 (1st Cir. 1995) (quoting Gaudreault v. Mun. of Salem, 923 F.2d 203, 208 (1st Cir. 1990)).

The Eighth Amendment's guarantee of adequate medical care applies to both mental health and physical health needs.

8

<u>Torracco v. Maloney</u>, 923 F.2d 231, 234 (1st Cir. 1991).

"Adequate medical care" requires treatment by qualified medical personnel who provide services that are of a quality acceptable when measured by prudent professional standards in the community, tailored to an inmate's particular medical needs, and that are based on medical considerations. <u>United States v. DeCologero</u>, 821 F.2d 39, 42-43 (1st Cir. 1987). This does not mean that an inmate is entitled to the care of his or her choice, simply that the care must meet minimal standards of adequacy. Deliberate indifference may be found where the medical care provided is "so clearly inadequate as to amount to a refusal to provide essential care." <u>Toracco</u>, 923 F.2d at 234. Constraints effected by the prison settings may affect the choice of care provided, and may be relevant to whether or not inadequate care was provided with a deliberately indifferent mental state on the part of prison officials. <u>Wilson v. Seiter</u>, 501 U.S. 294, 302 (1991). However, the Eighth Amendment does not permit necessary medical care to be denied to a prisoner because the care is expensive or because it might be controversial or unpopular. <u>See</u> <u>Kosilek</u>, 221 F.Supp.2d at 181-83 (internal citations omitted) (discussing the tension between penological concerns and the necessity of providing

9

adequate medical care to prison inmates). A blanket policy that prohibits a prison's medical staff from making a medical determination of an individual inmate's medical needs and prescribing and providing adequate care to treat those needs violates the Eighth Amendment. Id. at 183.

2.   Gender Identity Disorder

GID is a serious condition recognized by the medical community that frequently requires treatment, after evaluation by a medical professional experienced with GID. See Kosilek, 221 F.Supp.2d at 184. Treatment may involve psychotherapy, medication, hormone treatment or even surgery, depending on the individual patient. Id. There is a recognized professional standard of care for GID in the medical community. Id. at. 158.

Barrett has alleged that she suffers from GID, a serious medical problem. She further alleges that she has been denied even an evaluation for psychological, medical or surgical treatment for the disease. She further asserts that the medical care she has received does not comport with standards of care for her affliction that are recognized by the professional medical community. She has therefore satisfied the objective prong of an Eighth Amendment claim for inadequate medical care, as she has

10

alleged that she has a serious medical need for which she is not being provided treatment. Barrett has further claimed that the prison officials in question were aware of her need, both because she advised them in writing of her diagnosis and her need for treatment, and because while she was an inmate in a carefully monitored housing unit, she made numerous suicide and self-castration attempts. Coplan was also aware of Barrett's attempts to hurt or kill herself. Despite all of this, neither the prison's administration, medical staff or mental health staff evaluated Barrett for diagnosis and treatment for GID or provided her with any treatment for GID. These facts sufficiently allege that the defendants have been deliberately indifferent to Barrett's serious medical needs to allow this action to proceed against the defendants.

3. Individual Capacity Suits

Barrett has named five individual defendants to this suit: Phil Stanley, Commissioner of the New Hampshire Department of Corrections, Coplan, Freedman, Fellows and Fontaine. Barrett has alleged sufficient facts against Coplan, Freedman, Fellows, and Fontaine to allow this action to proceed against each of them in their individual capacities. Liberally construing the complaint,

11

I find that although she has not made specific allegations against him, except that he is the Commissioner of Corrections, Barrett seeks to sue Stanley individually in his supervisory capacity. "Supervisory liability under § 1983 cannot be predicated on a respondeat theory, but only on the basis of the supervisor's own acts or omissions." Matos v. Toledo Davila, 135 F.3d 182, 192 (1st Cir. 1998). A supervisor must be "either a primary actor involved in, or a prime mover behind, the underlying violation." Camilo-Robles v. Zapata, 175 F.3d 41, 43-44 (1999). There must be "an affirmative link, whether through direct participation or through conduct that amounts to condonation or tacit authorization." Id. at 44. To the extent that Barrett alleges that the defendants in this case were acting in accordance with a policy that prohibited any and all hormone or surgical treatment for inmates suffering from GID, regardless of their medical condition, I find that she has alleged a policy sweeping enough that it is reasonable to assume, for purposes of preliminary review, that the Commissioner of Corrections has at least tacitly approved the policy. Accordingly, I will allow the action to proceed against Stanley in his individual capacity.

4.  Official Capacity Suits

Barrett has sued the defendants in their official capacities.  It is well-settled that the Eleventh Amendment bars suits against state entities and state agents working in their official capacities unless the state has expressly waived immunity, which has not been done by New Hampshire for actions brought under § 1983.  See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993) (absent waiver, neither a State nor agencies acting under its control may be subject to suit in federal court); Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) (holding that neither a state nor its officials acting in their official capacities are "persons" under § 1983).  Official capacity suits against officers of an agency are simply "another way of pleading an action against an entity of which an officer is an agent." Monell, 436 U.S. at 690 n.55.  To the extent Barrett brings official capacity claims against the defendants, who are all employees of the NHSP, I will recommend the dismissal of those claims in a Report and Recommendation issued simultaneously with this Order.

13

## Conclusion

Without commenting on the merits of the suit, I find that Barrett has stated claims upon which relief may be granted for inadequate medical care against the defendants in their individual capacities. Accordingly, I order the complaint (document no. 2) be served on defendants. Pursuant to the Agreement of Acceptance of Service entered into between the Clerk of Court and the Attorney General of the State of New Hampshire ("AG"), the Clerk's office is directed to forward to the AG's office, by certified mail, return receipt requested, copies of this order, the Report and Recommendation, and the complaint (document no. 2). See LR 4.3(d)(2)(C). Within thirty days from receipt of these materials, the AG will submit to the court an Acceptance of Service notice specifying those defendants who have authorized the AG's office to receive service on their behalf. When the Acceptance of Service is filed, service will be deemed made on the last day of the thirty-day period.

As to those defendants who do not authorize the AG's office to receive service on their behalf or whom the AG declines to represent, the AG shall, within thirty days from receipt of the aforementioned materials, provide a separate list of the last

14

known addresses of such defendants. The Clerk's office is instructed to complete service on these individuals by sending to them, by certified mail, return receipt requested, copies of these same documents.

Defendants are instructed to answer or otherwise plead within twenty days of acceptance of service. See Fed. R. Civ. P. 12(a)(1)(A).

Plaintiff is instructed that all future pleadings, written motions, notices, or similar papers shall be served directly on the defendants by delivering or mailing the materials to them or their attorneys, pursuant to Fed. R. Civ. P. 5(b).

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge

Date:   November 19, 2003

cc:   Lisa Barrett, *pro se*

15