**Oliver C. UDEMBA, Plaintiff, Appellant,**

v.

**Paul NICOLI, et al., Defendants, Appellees.**

**No. 00–1246.**

United States Court of Appeals, First Circuit.

Heard Nov. 9, 2000.

Decided Jan. 10, 2001.

---

Stephen B. Hrones, with whom Aderonke O. Lipede and Hrones & Garrity were on brief, for appellant.

Leonard H. Kesten, with whom Kurt B. Fliegauf, Deidre Brennan Regan, and Brody, Hardoon, Perkins & Kesten were on brief, for appellees.

Before SELYA, Circuit Judge,
COFFIN, Senior Circuit Judge, and
STAHL, Circuit Judge.

SELYA, Circuit Judge.

Plaintiff-appellant Oliver C. Udemba sued the Town of Framingham and two Framingham police officers, Paul Nicoli and Ronald Brandolini, for violating his civil rights by means of false arrest and the use of excessive force. 42 U.S.C. § 1983. Following a full-dress trial, a jury returned a take-nothing verdict. Udemba appeals, claiming that the trial court committed reversible error both in denying his motion for judgment as a matter of law and in allowing the admission of certain evidence. Concluding, as we do, that Udemba failed properly to preserve the former claim and that his lamentations about the district court's evidentiary rulings do not warrant a new trial, we affirm the judgment below.

## I. BACKGROUND

We present an overview of the facts as the jury might have found them, consistent with record support. We embellish this barebones account in the course of our subsequent discussion of the appellant's specific assignments of error.

Inclement weather dogged the Boston area during the afternoon and early evening of December 21, 1995. Despite the bad weather, the appellant did some extra driving at his wife's request. The Udembas were immigrants, and Mrs. Udemba had lost her work permit (colloquially known as a "green card") several months earlier. Since she was anxiously awaiting its replacement, she asked the appellant to check their post office box in Boston. The appellant obligingly detoured through Boston on his way home from his office in Canton.

After retrieving the mail, the appellant repaired to the family homestead in Framingham. When he arrived, he gave the mail to his son. Mrs. Udemba became upset when she found that the mail did not contain the anticipated green card. She accused the appellant of taking it, grabbed him by the shirt, and made threatening remarks. The appellant called the police.

Officers Nicoli and Brandolini responded to the appellant's call. The dispatcher informed them en route of complaints from neighbors about a disturbance at the Udembas' home. The officers entered the home a town house in a row of town houses and were confronted by the appellant (whom they described as "loud," "agitated," and "uncooperative"). They asked him to be seated in the living room. They then proceeded into the kitchen and interviewed Mrs. Udemba. She was five months pregnant at the time, and visibly upset.

Mrs. Udemba initially told the police that her husband had punched her in the stomach (a statement that she soon retracted). She went on to complain bitterly that he was withholding her green card. The officers brought her to the living room and, in her presence, questioned the appellant about the green card. The appellant denied his wife's allegations. Words were exchanged. Although there is conflicting testimony regarding the substance of this exchange, the parties agree that the decibel level was high.

According to the police, the conversation ended when the appellant made a threatening move toward Officer Nicoli. When Nicoli attempted to grab him, the appellant dashed toward the door. A struggle ensued. The officers ultimately subdued the appellant and, as they attempted to handcuff him, he bit Nicoli. They then arrested him for breach of the peace and led him outside in handcuffs. At that time, they noticed that a small crowd had gathered. In due course, the officers transported the appellant to the station house and charged him with disturbing the peace, Mass. Gen. Laws ch. 272, § 53, and assault and battery on a police officer, *id.* ch. 265, § 13D.

Some time later, the appellant was found not guilty on the criminal charges. He thereafter sued, remonstrating that the officers had violated his civil rights by falsely arresting him and by using excessive

force.[1] The case came on for trial before a jury on August 23, 1999. At the close of the evidence, the appellant moved for judgment as a matter of law. Fed. R.Civ.P. 50(a). The lower court denied the motion, and the jury subsequently returned a verdict in favor of the defendants. The appellant eschewed the filing of any post-trial motions. He did, however, launch an appeal.

## II. JUDGMENT AS A MATTER OF LAW

The appellant argues that the district court erred in denying his motion for judgment as a matter of law on the false arrest component of his section 1983 claim because the evidence permitted only one conclusion: that the police officers lacked probable cause to arrest him for disturbing the peace.[2] We conclude that the appellant has not properly preserved this point for appellate review.

■ In order to challenge on appeal the denial of a motion for judgment as a matter of law, the challenger must first have presented the same claim to the district court. *Hammond v. T.J. Litle & Co.*, 82 F.3d 1166, 1171 (1st Cir.1996); *Jusino v. Zayas*, 875 F.2d 986, 991 (1st Cir.1989). Indeed, no less an authority than the Supreme Court has declared that an appellate court is "without power to direct the District Court to enter judgment contrary to the one it had permitted to stand" absent a motion for judgment notwithstanding the verdict in district court. *Cone v. W. Va. Pulp & Paper Co.*, 330 U.S. 212, 218, 67 S.Ct. 752, 91 L.Ed. 849 (1947). In this instance, the appellant moved for judgment as a matter of law at the close of all the evidence. Fed.R.Civ.P. 50(a). The district court denied that motion the same day and the jury subsequently returned a verdict. The appellant thereafter failed to

renew his motion. That omission is fatal to the claim that he attempts to advance on appeal. We explain briefly.

■ The Civil Rules provide that when a trial court denies a motion for judgment as a matter of law prior to the submission of a case to the jury, the moving party may renew the motion no later than ten days after the entry of judgment. Fed. R.Civ.P. 50(b). If the moving party fails so to renew the motion, he forfeits any entitlement to appellate review of the earlier denial. *See Cantellops v. Alvaro-Chapel*, 234 F.3d 741, 743 (1st Cir.2000); *Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 269–71 (5th Cir.1998); *Varda, Inc. v. Ins. Co. of N. Am.*, 45 F.3d 634, 638 (2d Cir.1995); *see also* 9 James Wm. Moore et al., *Moore's Federal Practice* § 50.41 (3d ed.1999). Thus, to preserve for appeal the district court's rejection of a motion for judgment as a matter of law made at the close of the evidence, the movant must seasonably renew that motion post-verdict. The appellant's failure to comply with this requirement forecloses his attempted appeal of the district court's earlier ruling denying his motion for judgment as a matter of law.

■ To be sure, even when a party has failed to make the proper motion below, this court retains the authority to "inquire whether the record reflects an absolute dearth of evidentiary support for the jury's verdict." *Faigin v. Kelly*, 184 F.3d 67, 76 (1st Cir.1999). Withal, this authority must be exercised sparingly, *Correa v. Hosp. San Francisco*, 69 F.3d 1184, 1196 (1st Cir.1995), and the circumstances of this case do not lend themselves to its use.

■ An officer has probable cause to arrest a person for disturbing the peace if that person, in the officer's presence, en-

---

1. His complaint contained counts under both federal and state law, but for purposes of this opinion we need not differentiate among those counts. He also sued the Town of Framingham, but the district court severed that claim.

2. The appellant concedes the existence of a jury question in respect to the excessive force component of his section 1983 claim.

gages in unreasonably disruptive conduct that annoys or disturbs one or more other individuals. *Commonwealth v. Orlando,* 371 Mass. 732, 359 N.E.2d 310, 312 (Mass. 1977). In denying the appellant's pre-verdict motion for judgment as a matter of law, the district court found that the record contained "sufficient evidence ... for [the jury] to find that there was probable cause to believe that the offense of disturbing the peace took place and it took place in [the officers'] presence." Given the elements of the offense and the evidence of record here (particularly the testimony anent the appellant's behavior, his wife's agitation, the neighbors' complaints, and the gathered crowd), this finding does not seem so obviously insupportable as to warrant abandonment of the usual principles of forfeiture and procedural default.

## III. EVIDENTIARY ISSUES

 The appellant raises three different, but arguably related, evidentiary issues. We deal with them sequentially, keeping in mind that a trial court enjoys considerable discretion in connection with the admission or exclusion of evidence, and that its rulings in that regard are reviewed only for abuse of that discretion. *Iacobucci v. Boulter,* 193 F.3d 14, 20 (1st Cir. 1999).

### A.

The appellant asseverates that the district court erred in admitting evidence of his arrest, on or about June 15, 1997, for striking his spouse. In his view, this information constituted inadmissible character evidence under Federal Rule of Evidence 404(b) and, in all events, carried so significant a potential for prejudice that the lower court should have precluded its introduction under Federal Rule of Evidence 403.

The facts are straightforward. The appellant himself set the stage for the admission of the evidence that he now seeks to challenge. In elaboration of his claimed damages, he told on direct examination about his humiliation when news of his arrest appeared in the local newspaper and emphasized the mental anguish that followed. Since the appellant did not testify to a closed period of emotional distress, defense counsel sought to minimize this open-ended claim by inquiring about a subsequent arrest that evoked the same sort of newspaper publicity. The district court allowed this cross-examination for the limited purpose of assisting the jury in determining the extent of damages suffered for mental anguish and emotional distress. The appellant assigns error.[3]

 Before reaching the merits of the assigned error, we must grapple with an antecedent problem. Although the appellant objected below to this questioning, he did not mention Rule 404(b), but seems to have premised his objection on the notion that time was being wasted on the subject of the second arrest. The court overruled the objection after telling defense counsel that he could not "wallow" in the evidence. It is a bedrock rule that a party who unsuccessfully objects to the introduction

---

**3.** The appellant also asserts that the district court ignored its own mandate to confer at sidebar before exposing the jury to evidence of the newspaper coverage of the subsequent arrest. This assertion misconstrues the record. At the pretrial conference, Judge Woodlock ruled on the appellant's in limine motion to exclude the testimony of Pamela Buford–Pomales and Paul O'Connell (two police officers who had been involved in the subsequent arrest) in respect to alleged spousal abuse. The judge concluded that "with respect to the ongoing domestic abuse," these witnesses' testimony could not be used "except to impeach [Mrs. Udemba]," that "no reference could be made during opening statements [to that testimony]," and that if the parties intended to introduce that testimony, they would have to approach the bench before doing so. Read in context, this "first approach the bench" directive implicated direct evidence of spousal abuse, and nothing in the record indicates that the directive encompassed cross-examination of the appellant in respect to the publicity associated with the second arrest. The appellant's assertion that the judge ignored his own mandate is, therefore, baseless.

of evidence on one ground cannot switch horses in midstream and raise an entirely new ground of objection on appeal without forfeiting the usual standard of review. *See Clausen v. Sea–3, Inc.,* 21 F.3d 1181, 1194 (1st Cir.1994); *Hollenback v. United States,* 987 F.2d 1272, 1281 (7th Cir.1993); *Tate v. Robbins & Myers, Inc.,* 790 F.2d 10, 12 (1st Cir.1986); *see also* Fed.R.Evid. 103(a)(1). Our review, therefore, is for plain error.

[10] Federal Rule of Evidence 404(b) suggests a framework for determining the admissibility of evidence of other bad acts.[4] This framework demands a bifurcated inquiry. First, the trial court must consider whether the proffered evidence has some special relevance which enables it to shed light on a disputed issue in the case, rather than merely to show a defendant's deplorable character or propensity for wrongdoing. *Veranda Beach Club Ltd. Partnership v. Western Sur. Co.,* 936 F.2d 1364, 1373 (1st Cir.1991); *United States v. Rodriguez–Estrada,* 877 F.2d 153, 155 (1st Cir.1989). If the proffered evidence passes the special relevance screen, it then must be subjected to the rigors of Rule 403. At that stage of the inquiry, the evidence, though relevant, nonetheless may be excluded if its probative value is *substantially* overbalanced by other considerations. *Veranda Beach Club,* 936 F.2d at 1373; *Rodriguez–Estrada,* 877 F.2d at 155–56.

▆▆▆ In this instance, we conclude without serious question that the challenged evidence passes muster under the first prong of the Rule 404(b) inquiry. In reaching this conclusion, we reject the appellant's concept that Rule 404(b) contains a comprehensive list of all the ways in which evidence of other bad acts may be specially relevant. Although the text of that rule enumerates some of the purposes for which such evidence may be admitted (e.g., to show "motive" or "intent"), that list is not exhaustive. *United States v. Fields,* 871 F.2d 188, 196 (1st Cir.1989). Here, we accept the district court's supportable finding that the evidence was specially relevant to a contested issue in the case, namely, the extent of damages attributable to emotional distress. *See Lewis v. District of Columbia,* 793 F.2d 361, 363 (D.C.Cir.1986) (holding that the admission of evidence of other bad acts to assist the jury in measuring the extent of damages is a legitimate, non-character-based use of such evidence); *see also Halvorsen v. Baird,* 146 F.3d 680, 687 (9th Cir.1998); *Gastineau v. Fleet Mortgage Corp.,* 137 F.3d 490, 495 (7th Cir.1998).

▆▆▆ The second part of the inquiry balancing the evidence's probative value against its prejudicial effect presents a closer call.[5] On the one hand, the appellant's subsequent arrest was for allegedly striking his spouse, and testimony about that incident plainly carried a risk of extraneous prejudice. On the other hand, given the appellant's testimony on direct examination linking his mental anguish to the newspaper reportage of his arrest, the publicity about the "second arrest" incident had obvious probative worth as to the nature and extent of the ensuing damages. In the last analysis, the very closeness of the call militates in favor of upholding the trial court's determination. Rule 403 balancing is a quintessentially fact-sensitive enterprise, and the trial judge is in the

---

4. The text provides in pertinent part:

 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

 Fed.R.Evid. 404(b).

5. This phase implicates Rule 403, which states:

 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

 Fed.R.Evid. 403.

best position to make such factbound assessments. Recognizing that coign of vantage, we typically give the district court wide latitude when evaluating the delicate balance that Rule 403 requires. "Only rarely and in extraordinarily compelling circumstances will we, from the vista of a cold appellate record, reverse a district court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect." *Freeman v. Package Mach. Co.*, 865 F.2d 1331, 1340 (1st Cir. 1988).

That precept guides our resolution of this issue. Because the circumstances here are not shocking, or even out of the ordinary in any relevant sense, we cannot find plain error in the conclusion that any unfair prejudice failed substantially to outweigh the legitimate gain to be derived from permitting the jury to hear the "second arrest" evidence.

### B.

The appellant next challenges the cross-examination of Mrs. Udemba regarding the second arrest. Once again, a question about the standard of review lies at the threshold. We recount the circumstances.

The appellant notified the trial court of his intention to call Mrs. Udemba as a witness. Since the second arrest already had surfaced, *see supra* Part III(A), he sought a protective ruling, in the nature of a ruling in limine, to prevent the appellees from cross-examining Mrs. Udemba about the details of that incident. Judge Woodlock declined to make a definitive ruling in advance of the actual cross-examination, but indicated that he was prone to allow an inquiry into the circumstances of the second arrest.[6]

The appellant then called Mrs. Udemba. Her direct examination was unremarkable. During cross-examination, defense counsel probed the matter of the second arrest *largely without objection.*[7] In the course of this interrogation, Mrs. Udemba described the circumstances of the second arrest. She insisted that her husband had not struck her on that occasion, but had only pushed her away. She likewise denied having told a law enforcement officer that her husband had choked and punched her. Nevertheless, her children had placed a 911 call to the police.

The fact that the appellant failed to interpose a contemporaneous objection to virtually all of this testimony dictates the standard of review. The district judge's earlier comments were provisional, and the appellant, had he decided to press the point, had ample opportunity to reiterate his objection in a timely manner. When the moment came, he chose, for whatever reason, not to take up the cudgels. This may have been an oversight on the part of competent counsel in the midst of a hard-fought trial or a well-calculated stratagem. Whatever the etiology, however, the record reflects that the appellant did not interpose contemporaneous objections to most of the cross-examiner's questions. Accordingly, our review is for plain error. *See United States v. Noah*, 130 F.3d 490, 496 (1st Cir.1997) ("It is settled in this circuit that, when the district court tentatively denies a pretrial motion in limine, or temporizes on it, the party objecting to the preliminary in limine determination must renew his objection during the trial, and the failure to do so forfeits any objection."); *Freeman*, 865 F.2d at 1336–38 (similar); *cf. United States v. Griffin*, 818 F.2d 97, 105 (1st Cir.1987) (holding that, in order to preserve a claim of error

---

**6.** Judge Woodlock stated, inter alia, that he "would be likely to permit [defense counsel] some scope to inquire as to [the Udembas'] relationship." Although he could only "rule on these [questions] as they arise," his "preliminary view [was] to permit some exploration." As a consolation, however, he told the appellant's counsel that he was "prepared to give a curative instruction as you see fit."

**7.** The appellant did object to one preliminary question, but thereafter stood silent. At no time did he request or receive a continuing objection to this line of testimony.

under Rule 403, a party cannot rely upon a provisional ruling in respect to a motion in limine, but, rather, must make a contemporaneous objection during trial).

■ Having established the standard of review, we turn now to the admissibility of the evidence. At trial, the appellees contended that examining Mrs. Udemba about the "second arrest" incident would be probative of her relationship with and her bias toward the appellant, showing the lengths to which she would go to protect her husband and obscure any scandal. The district court, in its preliminary ruling, tentatively accepted this rationale and indicated that it likely would permit inquiry for the sole purpose of illuminating the witness's potential bias. We test this hypothesis.

■ Bias can be defined, broadly speaking, as "the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party." *United States v. Abel*, 469 U.S. 45, 52, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984). It may stem from a wide variety of causes, including "a witness' like, dislike, or fear of a party, or . . . the witness' self-interest." *Id.* So defined, bias is fertile territory for cross-examination. The jury, *qua* factfinder, must assess the credibility of witnesses to determine the accuracy of their testimony, and information as to bias can be of great assistance in making such determinations. *United States v. Balsam*, 203 F.3d 72, 85 (1st Cir.2000).

In this case, the relationship between the evidence and the issue of bias is less than compelling. Indeed, under other circumstances we might consider the link too tenuous. Here, however, the jury already

knew of the second arrest through the appellant's testimony, and the trial court cautioned the jury regarding the limited applicability of this evidence.[8] Thus, the relatively low probative value attached to the evidence was offset by the relatively small potential for unfair prejudice. *Cf. United States v. Cruz*, 797 F.2d 90, 95–96 (2d Cir.1986) (finding no error in admission of evidence having low probative value when the evidence's prejudicial effect was negligible). Considering the totality of the circumstances and the breadth of the trial court's discretion in such matters, we cannot say that allowing inquiry on this point amounted to error, plain or otherwise.

### C.

The final assignment of error concerns what transpired on December 21, 1995 (the night that the appellant summoned police to the Udembas' Framingham town house). When cross-questioning Mrs. Udemba, defense counsel inquired whether she had been struck by her husband on that occasion. She replied in the negative. When pressed, she professed not to recall having made a contrary statement during the investigation of the second arrest.

Later in the trial, defense counsel called Officer Paul O'Connell to the stand. O'Connell had been involved in effecting the second arrest and investigating the surrounding circumstances. He vouchsafed that Mrs. Udemba told him during that assignment that her husband had struck her in late 1995 (when she was five months pregnant). The appellant asserts that the district court abused its discretion in admitting O'Connell's testimony. We do not agree.

---

**8.** The court twice admonished the jury against using the testimony as propensity evidence. These admonitions are typified by the court's instruction that the inquiry had been permitted solely "so that you could understand the nature of the relationship between the witness, Mrs. Udemba, and the plaintiff here so that you can make a discriminating determination about whether or not Mrs.

Udemba was influenced, was fearful, felt some special obligation to her husband, so that you can understand the nature of the interchanges between a witness and the party to help you determine whether or not and, if so, to what degree a witness's testimony is credible." The appellant neither objected to this instruction nor questioned the court's choice of phrase.

**18**

The appellant's principal thesis is that a party may not present extrinsic evidence to impeach a witness through contradictory statements on a collateral matter. This thesis is generally sound, *see United States v. Beauchamp,* 986 F.2d 1, 3 (1st Cir.1993); Fed.R.Evid. 608(b), but it has no application here. A different rule obtains in respect to *material* issues. *Foster v. Gen. Motors Corp.,* 20 F.3d 838, 839 (8th Cir.1994) (per curiam); *United States v. Barrett,* 766 F.2d 609, 619 (1st Cir.1985); *United States v. Opager,* 589 F.2d 799, 802–03 (5th Cir.1979). Because the facts in question here the appellant's subsequent arrest and alleged spousal abuse are not tangential to the case, but, rather, implicate material matters, a possibility exists for using extrinsic evidence. *See* Fed. R.Evid. 613(b) (permitting proof of a prior inconsistent statement by extrinsic evidence so long as the declarant "is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon").

We recently explained the operation of this rule in *United States v. Winchenbach,* 197 F.3d 548, 557–59 (1st Cir.1999). There, as here, we dealt with a situation in which two statements, one made at trial and one made previously, were at odds with one another. We held that: "In such an event, the cross-examiner is permitted to show the discrepancy by extrinsic evidence if necessary not to demonstrate which of the two is true but, rather, to show that the two do not jibe (thus calling the declarant's credibility into question)." *Id.* at 558. Since the preconditions for the operation of Rule 613(b) were satisfied here the declarant (Mrs. Udemba) was given ample opportunity to explain or deny her prior statement, and the opposite party (Mr. Udemba) was accorded an opportunity to interrogate the witness (Officer O'Connell) the district court appropriately permitted the introduction of the extrinsic evidence.

The appellant has a fallback position. He posits that, even if Rule 613(b) constitutes the rule of decision, his wife's statements should have been excluded because they were not squarely at odds with one another. Within wide limits, however, the determination of whether statements are in fact inconsistent for purposes of Rule 613(b) lies within the sound discretion of the district court. *United States v. Agajanian,* 852 F.2d 56, 58 (2d Cir.1988); *United States v. Jones,* 808 F.2d 561, 568 (7th Cir.1986). Here, the two statements, fairly read, are sufficiently at odds. There is a high probability that Mrs. Udemba's reference to "November or December of 1995" when she "was five months pregnant" denoted the evening of December 21, 1995, and the appellant points to nothing in the record that suggests a different frame of reference.

To say more on this point would be supererogatory. Statements need not be directly contradictory in order to be deemed inconsistent within the purview of Rule 613(b). *E.g., United States v. Denetclaw,* 96 F.3d 454, 458 (10th Cir.1996); *United States v. Strother,* 49 F.3d 869, 874–75 (2d Cir.1995); *United States v. Dennis,* 625 F.2d 782, 795–96 (8th Cir. 1980). Given this standard, the district court did not exceed the scope of its discretion in treating the statements *sub judice* as inconsistent.

## IV. CONCLUSION

We need go no further. For aught that appears, the appellant received a fair trial, unmarred by reversible error. Beneath the surface of his legal argumentation, his principal complaint seems to be that the jury saw things the appellees' way. But disappointment alone, no matter how keenly felt, is not the stuff of which successful appeals are fashioned.

*Affirmed.*