# United States Court of Appeals
## For the First Circuit

No. 03-2189

NED ZACHAR AND JANET ZACHAR,

Plaintiffs, Appellees,

v.

JEFFREY W. LEE, SUSAN A. LEE AND
JEFFREY W. LEE REAL ESTATE, INC.,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nancy Gertner, U.S. District Judge]

Before

Selya, Circuit Judge,

Coffin, Senior Circuit Judge,

and Smith,[*] District Judge.

W. Paul Needham, with whom Mark A. Johnson, was on brief for
appellants.
James A.G. Hamilton, with whom Susan E. Stenger and Perkins,
Smith & Cohen, LLP, were on brief for appellees.

April 2, 2004

---

[*] Of the District of Rhode Island, sitting by designation.

**SMITH**, **District Judge**. This appeal challenges a jury verdict and award of $205,000 in damages for breach of the implied covenant of good faith and fair dealing in connection with an attempted sale of a home on Nantucket Island, in Massachusetts. The Appellants Jeffrey W. Lee, Susan A. Lee, and Jeffrey W. Lee Real Estate, Inc. ("Lee Real Estate" or the "Lees") assert two errors on appeal: (1) that the district court erred by denying their motion for judgment as a matter of law brought under Rule 50 of the Federal Rules of Civil Procedure, and (2) that the district court should not have admitted Appellees Ned and Janet Zachar's (the "Zachars") expert's report into evidence in its entirety. After a careful review of the record, we affirm.

## I. THE FACTS

We take the facts and the reasonable inferences therefrom in the light most hospitable to the jury's verdict. See Correa v. Hosp. San Francisco, 69 F.3d 1184, 1188 (1st Cir. 1995); Sanchez v. Puerto Rico Oil Co., 37 F.3d 712, 716 (1st Cir. 1994); Wagenmann v. Adams, 829 F.2d 196, 200 (1st Cir. 1987).

On August 21, 1998, the Zachars, enamored with Nantucket in summer, signed a purchase and sale agreement (the "P&S") with the Lees to purchase property located at 2 Anne's Lane on Nantucket (the "Property"). The agreed-upon purchase price for the Property was $2,050,000. In accordance with the P&S, the Zachars made the required ten percent deposit of $205,000 to the Lees' attorney, and

-2-

the purchase of the Property was scheduled to close on February 2, 1999.

Like the setting sun, however, by late December 1998, the Zachars' desire to purchase the Property began fading to the west when Mr. Zachar accepted a job as a telecommunications stock analyst in San Francisco. However, under the terms of the P&S, the Zachars' failure to close on the Property would result in their forfeiture of the $205,000 deposit. In an attempt to avoid this result, the Zachars proposed an alternative arrangement that might allow them to recoup, in whole or in part, the deposit they placed on the Property. On January 13, 1999, the Zachars and Lees entered into an agreement (the "Agreement") that required the Lees to list the Property for sale on July 1, 1999, and keep it on the market through February 29, 2000. Under the terms of the Agreement, if the Property sold before February 29, 2000, the Lees were obligated to pay the Zachars any funds in excess of the sale price set forth in the P&S up to a maximum of $205,000.

The Agreement also provided that Lee Real Estate, as the sole broker for the Property, would use reasonable and commercially acceptable means to sell the Property. The Agreement provided, in pertinent part, that:

> Mr. and Mrs. Lee agree to list the property with Lee Real Estate, Inc. for sale commencing July 1, 1999 at a price to be chosen by them. Lee Real Estate shall market and attempt to sell the property in a

reasonable commercial manner as comparable properties are marketed on Nantucket.

Agreement at ¶ 4. On July 1, 1999, the Lees listed the Property for sale with Lee Real Estate. Because the median sales prices of Nantucket homes in 1999 had been increasing substantially, Lee Real Estate set the asking price for the Property at $2,475,000 -- approximately $500,000 higher than the price of the Property at the time the Zachars and Lees entered into the P&S. The Lees did not lower the asking price for the Property during the term of the Agreement, and when the Agreement expired on February 29, 2000, the Property had not sold. The Zachars were therefore unable to recoup any of their $205,000 deposit.

## II. THE PROCEEDINGS BELOW

The Zachars brought suit against the Lees and their real estate company asserting five causes of action: (1) breach of contract; (2) misrepresentation; (3) breach of the implied covenant of good faith and fair dealing; (4) conversion; and (5) a violation of Mass. Gen. Laws ch. 93A. Following a trial, the Zachars' case was submitted to the jury on the breach of contract and breach of the implied covenant of good faith and fair dealing claims.[1] The

---

[1] The district court docket is silent with respect to the fate of the Zachars' misrepresentation and conversion claims, but pleadings filed with the district court indicate that these claims were voluntarily dismissed with prejudice by the Zachars prior to the case being submitted to the jury. The ch. 93A claim was tried to the court. On July 23, 2003, the district court issued a written decision that dismissed the ch. 93A claim on the merits.

-4-

jury found that the Lees did not breach the Agreement and returned a verdict on that count in their favor. However, the jury found that the Lees breached the implied covenant of good faith and fair dealing, and awarded the Zachars $205,000 in damages with respect to that count.

Pursuant to Fed. R. Civ. P. Rule 50, the Lees moved for judgment as a matter of law at the close of the evidence and again following the jury verdict. The district court denied both motions. This appeal followed.

### III. ANALYSIS

#### A. Sufficiency of the Evidence on the Plaintiffs' Implied Covenant of Good Faith and Fair Dealing Claim.

The Lees argue that there was insufficient evidence for the jury to conclude that they breached the implied covenant of good faith and fair dealing. Specifically, the Lees contend that because the jury found that they did not breach the Agreement (including the provision regarding the reasonable marketing of the property), it could not have considered evidence relating to the marketing of the property to find a breach of the implied covenant. Accordingly, the Lees contend there was insufficient evidence, absent marketing-related evidence, to find a breach of the implied covenant and the district court should therefore have granted their Rule 50 motion.

In most instances, we review *de novo* the district court's decision to deny a Rule 50 motion for judgment as a matter of law. See Gibson v. City of Cranston, 37 F.3d 731, 735 (1st Cir. 1994). In undertaking this review, we look to all evidence in the record, drawing all reasonable inferences therefrom in the nonmovants' favor, and resist the temptation to weigh the evidence or make our own credibility determinations. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000); Correa, 69 F.3d at 1191; Gibson, 37 F.3d at 735. We "may reverse the denial of such a motion only if reasonable persons could not have reached the conclusion that the jury embraced." Correa, 69 F.3d at 1191 (citing Sanchez, 37 F.3d at 716).

However, before we undertake this review we must be satisfied that the Lees properly preserved their arguments for appeal. Rule 50(a) requires that challenges to the sufficiency of the evidence must be raised initially at the close of the evidence. Such challenges must be sufficiently specific so as to apprise the district court of the grounds relied on in support of the motion. See Fed. R. Civ. P. 50(a)(2); Correa, 69 F.3d at 1196. Accordingly, a motion for judgment as a matter of law at the close of the evidence "preserves for review only those grounds specified at the time, and no others." Id. (citing Sanchez, 37 F.3d at 723). If the Rule 50(a) motion is denied and the case is submitted to a jury, the movant must renew the motion once again in order to

preserve the issue for appeal.  See Fed. R. Civ. P. 50(b); Martin H. Redish, 9 *Moore's Federal Practice* ¶ 50.41 (3d ed. 2003).  The grounds for the renewed motion under Rule 50(b) are limited to those asserted in the earlier Rule 50(a) motion.  See <u>Correa</u>, 69 F.3d at 1196 ("The movant cannot use [a Rule 50(b)] motion as a vehicle to introduce a legal theory not distinctly articulated in its close-of-evidence motion for a directed verdict."); <u>Sanchez</u>, 37 F.3d at 723.

The Lees argued in their Rule 50(a) motion that the Zachars' claim for breach of the implied covenant of good faith and fair dealing was "indistinguishable from their claim for breach of contract."  They further argued that, to the extent that these claims could be treated separately, "there was no breach of the implied covenant."  The district court denied this motion. Following the jury verdict, the Lees renewed their motion under Rule 50(b).  The Rule 50(b) motion tried a new tack arguing that because the jury found in their favor on the breach of contract claim (implicitly finding that they had acted in a commercially reasonable manner when marketing the Property), the jury could not have relied upon the Lees' marketing efforts to conclude that the Lees breached the implied covenant of good faith and fair dealing. Absent that evidence, the Lees argued that there was insufficient evidence to support a verdict on the implied covenant of good faith and fair dealing claim.  Unpersuaded, the district court also

denied this motion.  In this appeal, the Lees press the same grounds argued in the Rule 50(b) motion.

The Lees' challenge to the implied covenant of good faith and fair dealing claim is one that was not advanced in their Rule 50(a) motion.  At the close of the evidence, the Lees sought judgment as a matter of law arguing that the breach of contract and breach of the implied covenant of good faith and fair dealing claims were essentially duplicative.  Such an objection however is simply not sufficient to preserve, and certainly cannot be read to encompass, the legal theory underlying the Lees' Rule 50(b) motion and this appeal (that a finding of breach of contract is a prerequisite to a finding of breach of the implied covenant of good faith and fair dealing).

Given the Lees' failure to comply with the strictures of Rule 50, our review is limited to "'whether the record reflects an absolute dearth of evidentiary support for the jury's verdict.'" Davignon v. Clemmey, 322 F.3d 1, 13 (1st Cir. 2003) (quoting Udemba v. Nicoli, 237 F.3d 8, 13-14 (1st Cir. 2001)).  Under this standard, the district court will only be reversed when "its ruling is obviously insupportable."  Id. (citing Udemba, 237 F.3d at 13-14). A review of the record leaves us with no doubt that the jury had sufficient evidence before it (albeit conflicting evidence) to conclude that the Lees violated the implied covenant of good faith and fair dealing.

It is apparent that the Lees developed the theory raised in their Rule 50(b) motion only after the jury's verdict, because the Lees failed to object to the jury instruction on the implied covenant of good faith and fair dealing claim. If the Lees believed that the breach of a contract is a *sine qua non* in any claim for breach of the implied covenant of good faith and fair dealing, they would - and should – have asked for such an instruction. They did not, and by failing to do so, the Lees forfeited their argument to the extent that it was not forfeited by their failure to assert those grounds in their Rule 50(a) motion.

Furthermore, even if the Lees' argument in this appeal could be construed as a claim that the jury's verdicts in this case were inconsistent (a ruling in their favor on the breach of contract but against them with respect to the implied covenant), such an argument would still be waived. This court has held that objections to the inconsistency of verdicts ordinarily must be made after the verdict is read and before the jury is discharged. See Babcock v. General Motors Corp., 299 F.3d 60, 63-64 (1st Cir. 2002). Here, the Lees failed to raise an objection to the verdicts before the jury was discharged. Therefore, the Lees' argument in this appeal is forfeited to the extent that it amounts to a claim that the verdicts were inconsistent.

**B.** **Admission of the Expert Report in its Entirety.**

The Lees argue that the district court erred when it admitted into evidence the entire appraisal report of Robert W. Saben, Jr., the Zachars' expert witness. The Lees contend that portions of the report (specifically, those containing Saben's opinion that a reasonable marketing period for the Property would have been six to twelve months) are based on an unreliable methodology, and that Saben was not qualified to render such an opinion.

We review a district court's decision to admit expert testimony for abuse of discretion. Gaydar v. Sociedad Instituto Gineco-Quirurgico y Planificacion, 345 F.3d 15, 24 (1st Cir. 2003); Correa v. Cruisers, a Div. of KCS Int'l, Inc., 298 F.3d 13, 24 (1st Cir. 2002). During direct examination of Saben, his appraisal report of the Property was offered into evidence. The Lees' counsel objected to the admission of the entire report, but did not specify any portions of the report. The district court admitted the entire appraisal report into evidence. The Zachars contend that such a general objection to the admission of an expert report is insufficient under Fed. R. Evid. 103(a)(1)(requiring objections to the admission of evidence to state the "specific ground of objection"), and therefore does not preserve this ground for appeal. While the Zachars may be correct with respect to the need

-10-

for specificity in the objection, a trial objection is not the only avenue available to a party to preserve the right to appeal.

Prior to trial, the Lees filed a motion *in limine* to prevent Saben from testifying regarding the adequacy of the Lees' marketing efforts. This motion was denied by the district court. The 2000 Amendment to Federal Rule of Evidence 103 specifically provides that once the district court "makes a definitive ruling on the record admitting . . . evidence, either at or before trial, a party need not renew an objection . . . to preserve a claim of error for appeal." Fed. R. Evid. 103(a)(2); accord Crowe v. Bolduc, 334 F.3d 124, 133 (1st Cir. 2003)(holding that denial of a motion *in limine* preserves an issue for appeal, despite the absence of an objection at trial). Here, the Lees preserved their grounds for appeal with respect to Saben's appraisal report by filing the motion *in limine* and receiving a definitive denial of that motion on the record. Accordingly, the Lees' inartful objection at trial to the admission of the report does not prevent them from appealing the admission of the appraisal report. See Crowe, 334 F.3d at 133.

Freed from this procedural snag, we turn to the substance of the Lees' argument. Rule 702 of the Federal Rules of Civil Procedure sets forth the ground rules for consideration of expert testimony. The rule provides:

> If scientific, technical, or other specialized
> knowledge will assist the trier of fact to
> understand the evidence or to determine a fact
> in issue, a witness qualified as an expert by

-11-

> knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Supreme Court's decisions in Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), and Kumho Tire Co. v. Carmichael, 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999), guide district courts when determining the admissibility of evidence under Rule 702. Under the holding of Daubert, a district court must act as a "gatekeeper" by determining "whether the reasoning or methodology underlying the testimony is . . . valid and whether that reasoning properly can be applied to the facts in issue." 509 U.S. at 592-93. The court's assessment of reliability is flexible, but "an expert must vouchsafe the reliability of the data on which he relies and explain how the cumulation of that data was consistent with standards of the expert's profession." SMS Sys. Maint. Servs., Inc. v. Digital Equip. Corp., 188 F.3d 11, 25 (1st Cir. 1999). In Kumho Tire, the Court extended the reach of Daubert's gatekeeping function to cover all types of expert testimony involving technical or otherwise specialized knowledge. 526 U.S. at 141.

The Lees argue that Saben was not qualified to render the opinion that a reasonable marketing period for the Property would have been six to twelve months. Further, the Lees argue that,

-12-

irrespective of his qualifications, Saben relied on an unreliable methodology to reach his opinion. However, these are issues we need not decide because even if we assume Saben was not qualified to provide an opinion as to the marketing of the Property, and the portion of the report in question was, in fact, the product of an unreliable methodology, the district court's admission of that portion of the report would be harmless error.

In determining whether an error is harmless, "[o]ur inquiry is 'whether [admission] of the evidence affected the plaintiff[s'] substantial rights.'" Lubanski v. Coleco Indus., Inc., 929 F.2d 42, 46 (1st Cir. 1991) (quoting Vincent v. Louis Marx & Co., Inc., 874 F.2d 36, 41 (1st Cir. 1989)). "'The standard for reviewing a district court's nonconstitutional error in a civil suit requires that we find such error harmless if it is highly probable that the error did not affect the outcome of the case.'" Moulton v. Rival Co., 116 F.3d 22, 26 (1st Cir. 1997) (quoting Harrison v. Sears, Roebuck & Co., 981 F.2d 25, 29 (1st Cir. 1992)). The centrality of the evidence that was admitted and the prejudicial effect of its inclusion are important factors to consider; however, a harmless error analysis must consider the admission of the evidence in light of the entire record. See Vincent, 874 F.2d at 41.

Saben's opinion regarding a reasonable marketing period for the Property was hardly the focus of his testimony, or of the

-13-

Zachars' case for that matter. A review of Saben's testimony, as well as the appraisal report itself, reveals that the marketing opinion was buried on one page near the end of Saben's forty-five page appraisal report. Saben's marketing opinion was not addressed on either direct examination or in closing argument.[2] Moreover, the record reveals that the jury had enough (though not abundant) evidence, independent of the contested portion of Saben's report, to conclude that the Lees' approach to the marketing of the Property amounted to a breach of the implied covenant of good faith and fair dealing. The jury heard testimony regarding the Lees' listing price for the Property and its substantial increase since the Zachars signed the P&S. The jury also heard evidence showing that the Lees never lowered the price of the Property during the time it was on the market, despite the fact that they never received an offer on the Property. Jeffrey Lee even testified that it is common practice to lower the price of a house when no offers are forthcoming. From this evidence, the jury could have concluded that the Lees' asking price for the Property was over-inflated and their refusal to lower the price was deliberately intended to ward off potential buyers. The Zachars presented additional evidence

_____

[2] In their brief, the Lees contend that the Zachars' counsel inserted the marketing opinion into the appraisal report so that it could be mentioned in closing argument. However, while the Zachars' counsel did discuss the appraisal report during closing argument, he never specifically addressed Saben's opinion regarding the reasonable marketing period for the Property.

-14-

that the Lees failed to advertise the Property in the Inquirer & Mirror, a publication commonly used to advertise the sale of Nantucket real estate, for much of July. This omission, coupled with the over-inflated price, was adequate evidence for the jury to determine that the Lees breached the implied covenant of good faith and fair dealing. Consequently, while it is theoretically possible that the admission of Saben's entire expert report had some slight prejudicial effect on the jury, we cannot say with "'fair assurance . . . that the judgment was [] substantially swayed'" by its admission. Espeaignnette v. Gene Tierney Co., 43 F.3d 1, 9 (1st Cir. 1994) (quoting Lubanski, 929 F.2d at 46).

*Affirmed.*