# United States Court of Appeals
## For the First Circuit

No. 09-1146

UNITED STATES OF AMERICA,

Appellee,

v.

PAUL MARE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Torruella, Lipez and Howard,
Circuit Judges.

Christie M. Charles for appellant.
Randall E. Kromm, Assistant United States Attorney, with whom
Carmen M. Ortiz, United States Attorney, was on brief, for
appellee.

February 9, 2012

**HOWARD**, **<u>Circuit Judge</u>**.  The Book of Isaiah speaks of a time when beauty will replace ashes.  <u>Isaiah</u> 61:3.  Apparently getting the prophecy backwards, defendant Paul Mare tried to burn down his beauty salon.  A federal jury convicted Mare of attempted arson, but he now claims that the district court erred in making two evidentiary rulings that prejudiced his defense at trial.  Concluding that the district court acted well within its discretion in making each ruling, we affirm.

**I.**

A condensed version of the facts suffices.  Mare owned and operated a beauty salon in downtown Boston.  On May 7, 2005, the salon was lightly damaged by a fire that bore telltale signs of arson.  Investigators concluded that Mare himself had set the fire in order to collect insurance proceeds, and he was eventually indicted for attempted arson, 18 U.S.C. § 844(i), mail fraud, 18 U.S.C. § 1341, and use of fire to commit the mail fraud, 18 U.S.C. § 844(h)(1).

One of the pieces of evidence linking Mare with the crime was a conversation he had with Nelson Correia, a former stylist at the salon.  On various occasions in September 2004, Mare had confided in Correia about his plan to set the fire and use the insurance money to pay for a move to New York City.  At one point, Correia expressed skepticism that Mare was actually capable of doing such a thing.  Mare retorted that arson was in fact nothing

new to him.  He recounted how, in May of 2000, he was responsible for another fire at the salon that had led to an insurance payout large enough to cover not only the cost of repairs, but also several other outstanding debts.  On the prior occasion as well, he needed money, and solved the problem by setting a fire and collecting a check from the insurance company.  So, Mare indicated to Correia, he was not only capable of, but successful at, using arson to his financial benefit.

After the government notified Mare of its intent to introduce Correia's account at trial, Mare moved the court to brand the testimony inadmissible under two separate provisions of the Federal Rules of Evidence.  He first alleged that the government wanted to introduce it only in order to demonstrate a propensity to commit bad acts, in violation of Rule 404(b).  He also argued that evidence of a similar but uncharged crime would be unfairly prejudicial under Rule 403.

The district court concluded that Correia's testimony concerning Mare's admissions would not offend either of these rules.  The court did, however, attempt to limit the prejudice to Mare by having the parties stipulate to the fact of the earlier fire and payment of insurance proceeds, rather than letting the government put on additional evidence corroborating Correia's restatement of Mare's admission that the other fire was actually arsonous.  Correia was then able to testify about his conversation

with Mare, with that stipulation as the only backdrop concerning the fire in 2000. The court would later emphasize to the jury that "[i]t is up to you to decide whether Mr. Correia is credible . . . . [T]here is no other evidence in the record that the 2000 fire outside of Salon Mare was an arson by Mare."

After Correia provided his account, Mare used his cross examination to attack Correia's credibility. On redirect examination, the government attempted to rehabilitate Correia by asking him whether he had ever been asked to undergo a polygraph test. But before the prosecutor could utter any more than the syllables "poly-", Mare alertly objected and proceeded to a conference at sidebar. The court admonished the prosecutor that polygraph evidence is inadmissible. The prosecutor explained that she had only planned to ask Correia about his willingness to take the test, not the results of any test that may have occurred. Explaining that even that much was inadmissible, the court sustained the objection. Mare immediately moved for a mistrial. The district court denied the motion, but on the next day delivered a curative instruction to the jury that

> polygraph tests as a matter of law are not reliable as trial evidence. Every court excludes them. And because they're unreliable, I instruct you that neither Nelson Correia nor any other witness called by the government was given a polygraph test; and therefore the credibility of Nelson Correia, as with every other witness, is solely and exclusively to be determined by you, the jury.

The jury ultimately found Mare guilty of attempted arson, but acquitted him of mail fraud and, consequently, of use of fire to commit mail fraud. Mare then lodged this appeal from the single guilty finding, insisting that the district court reversibly erred both in admitting Correia's testimony and in refusing to declare a mistrial following the polygraph inquiry.

**II.**

We begin with the admission of Correia's testimony concerning the 2000 fire. Mare offered two possible bases for excluding Correia's remarks: Rule 404(b) and Rule 403. We review Mare's objections, as we generally do preserved evidentiary challenges, for abuse of discretion.[1] <u>United States</u> v. <u>Morales-Machuca</u>, 546 F.3d 13, 22 (1st Cir. 2008).

Rule 404(b) provides in pertinent part that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The district court initially suggested that Correia's testimony was admissible for several of Rule 404(b)'s permissible purposes, but

---

[1] The government argues that Mare forfeited his Rule 403 objection by failing to renew it at trial after the court denied it during a motion in limine. Because we would reject Mare's claim even if fully preserved, we need not weigh the forfeiture implications of Mare's method of objection.

ultimately admitted the testimony for a different reason. The court held that the testimony concerned matters intrinsic to the crime charged and therefore did not trigger Rule 404(b)'s limitation on the use of evidence of "other crimes, wrongs or acts." See United States v. Villarman-Oviedo, 325 F.3d 1, 11 (1st Cir. 2003) (noting that where the challenged evidence is intrinsic to the crime charged in the indictment, Rule 404(b) is "really not implicated at all"). The court's theory was that relevant inferences could be drawn from Mare's account of his own state of mind, rather than from the fact of a prior bad act. In its written order, the court singled out Mare's fraudulent intent as one such inference.[2] It relied on our decision in United States v. Fazal-Ur-Raheman-Fazal, 355 F.3d 40, 50 (1st Cir. 2004), where we held that intrinsic evidence that would satisfy the charged crime's specific intent element is not governed by Rule 404(b).

This was not an abuse of discretion. In the typical 404(b) scenario, the evidentiary focal point is the existence of some bad conduct other than the charged offense. The concern is that, upon learning of that prior conduct, the jury might think worse of the defendant's character out of some "rel[iance] on the

---

[2] At other points before and during the trial, the court indicated that the reference to the prior fire was also intrinsically relevant for other purposes, such as motive and corroboration of Correia's other testimony. We do not consider these other purposes here, as we can affirm on the intent rationale alone.

-6-

aphorism 'once a criminal, always a criminal.'" <u>United States</u> v. <u>Rubio-Estrada</u>, 857 F.2d 845, 852 (1st Cir. 1988) (Torruella, J., dissenting). Here, by contrast, the focal point was the defendant's own statement concerning the charged offense itself -- "I am going to do it the way I did it the last time." The fact that Mare identified his plot with the uncharged offense sheds relevant light on his mindset in committing the charged offense. For example, as the district court suggested, it supported the government's case that he specifically intended to commit the charged arson in order to defraud, an element of the mail fraud statute under which he was charged. <u>See</u> 18 U.S.C. § 1341. That reasoning does not depend on an inference regarding Mare's character for acting in conformity with a prior bad act. Indeed, it does not even depend on Mare's having actually committed the prior bad act at all. It depends only on Mare's having made the statement. Reasonable jurors could have made pertinent inferences based solely on Mare's bark, regardless of whether they believed that he had ever previously backed it up with his bite. Mare's words were therefore relevant for a reason other than, to borrow a familiar phrase from another evidentiary canon, the truth of the matter asserted.

That leaves Rule 403 as the remaining sentinel guarding admissibility. Rule 403 provides in pertinent part that relevant evidence "may be excluded if its probative value is substantially

outweighed by the danger of unfair prejudice."  The balancing act that the rule demands "is a quintessentially fact-sensitive enterprise, and the trial judge is in the best position to make such factbound assessments."  Udemba v. Nicoli, 237 F.3d 8, 15-16 (1st Cir. 2001).  For that reason, "[o]nly rarely and in extraordinarily compelling circumstances will we, from the vista of a cold appellate record, reverse a district court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect."  Id. at 16.[3]

The prejudice to Mare stems from the risk that the jury could have received the testimony as character evidence of Mare's propensity to commit arson, notwithstanding its admission for a different purpose.  See United States v. Varoudakis, 233 F.3d 113, 122 (1st Cir. 2000) (observing how "Rule 403 . . . protects defendants from unfair prejudice resulting from criminal propensity evidence.").  Trial courts will often provide a limiting instruction in order to minimize the potential that this sort of multiple-use evidence veers down the wrong inferential path in the

_____

[3] Mare contends that the district court could not have considered his Rule 403 challenge because it stopped its analysis after concluding that Rule 404(b) did not bar admission.  But the district court noted numerous times that it was trying to avoid prejudice to Mare.  It also offered Mare the opportunity to submit a limiting instruction.  These efforts are sufficient to indicate that the district court concluded that the danger of unfair prejudice did not outweigh the probative value of the evidence that it chose to admit.  See United States v. Smith, 292 F.3d 90, 97-98 (1st Cir. 2002).

jurors' minds. See United States v. Escobar-de Jesus, 187 F.3d 148, 169 n.20 (1st Cir. 1999). Here, no such instruction was given -- but not for Mare's lack of opportunity to request one. When asked by the district court whether he wanted a Rule 404(b) jury instruction on the limited admissibility of prior bad acts evidence, Mare emphatically declined, noting that "that was not the purpose that you admitted it." The court responded, "That's exactly right." The ultimate jury instruction, which drew no objection from Mare, stated only that Correia's testimony was the sole evidence in the record that the 2000 fire was an arson committed by Mare. Anything the jury chose to infer from that testimony, however, was apparently fair game.

The risk of an impermissible propensity inference should be weighed in light of "the totality of the circumstances, including the government's need for the evidence given other available testimony." Varoudakis, 233 F.3d at 122. Mare contends that the government had no particular need for the reference to the 2000 fire since the jury could have relied on the rest of Correia's testimony to prove fraudulent intent. But the reference to the earlier fire, as intrinsic evidence, had more probative value than Mare lets on.

If viewed as intrinsic evidence of Mare's state of mind, his invocation of a prior arson makes his threat more credible. One who expresses a desire to commit a crime may merit some

suspicion, but one who expresses that desire while recounting in some detail a prior commission of the same crime merits a full-scale intervention. The second of these individuals, far less ambiguously than the first, sounds like someone who says what he means and means what he says. Thus, whatever doubt might have existed about the sincerity of Mare's intention to strike in the future was minimized by the specificity with which he described how he had struck in the past.

The question, then, is whether this probative value is <u>substantially</u> outweighed by the danger of unfair prejudice. The trial judge did not abuse her discretion in concluding that it was not. It is true that any reference to a prior bad act carries with it some risk of impermissible usage. Here, however, Mare declined a limiting instruction on permissible uses of the challenged testimony. That was his choice to make, and hardly an irrational one. "[M]any defense lawyers would shrink from an instruction that the jury should not count [a defendant's] propensity for [a particular crime] against him. Rather than erasing the risk that the jury would misuse the bad act evidence, such an instruction could easily invite the jury's attention to a quite natural inference." <u>United States</u> v. <u>Fanfan</u>, 468 F.3d 7, 12-13 (1st Cir. 2006). Here, where the testimony was admitted as intrinsic evidence, Mare could reasonably have gambled that a limiting instruction geared toward an extrinsic-evidence purpose would have

done more harm than good.  But he cannot now complain about the prejudice that flowed from the absence of that instruction.  Cf. United States v. Lugo Guerrero 524 F.3d 5, 14 (1st Cir. 2008) (rejecting direct challenge to the absence of a Rule 404(b) limiting instruction when none was requested).

Moreover, the district court limited the risk by first prohibiting the government from introducing evidence corroborating Correia's inculpation of Mare for the 2000 fire and then specifically instructing the jury that Correia's testimony was the only link in the record.  By keeping the focus away from the prior bad act, the court minimized the chances that the jury would convict for an uncharged offense rather than the charged one.

Mare relies on United States v. Utter, 97 F.3d 509 (11th Cir. 1996), and United States v. Fields, 871 F.2d 188 (1st Cir. 1989), in arguing that prejudice too far outstripped probative value, but neither case is availing.  In Utter, the Eleventh Circuit found an abuse of discretion in the district court's admission of evidence that a defendant's home had been destroyed by fire three years before the restaurant fire that had led to his indictment on arson and mail fraud charges.  That holding, however, was based in large part on the government's failure to proffer any evidence at trial that tended to prove that the earlier fire was an arson.  97 F.3d at 514.  In Mare's case, by contrast, the very

testimony whose admissibility is challenged tends to prove just that.

In _Fields_, we held that "if the acts admitted under rule 404(b) are too remote in time, this substantially weakens their probative value and weighs in favor of exclusion." 871 F.2d at 198. Mare would have us find an abuse of discretion because a five-year gap separates the charged offense from the prior bad act. But "there is no absolute rule governing the number of years that can separate offenses," and the district court "must apply a reasonableness standard that examines the facts and circumstances of each case." _Id._ We think that, considering the unusualness of the events involved, the passage of five years did not diminish the evidence's probativeness.

Balancing the probative value and prejudicial effect of evidence under Rule 403 is a highly fact-dependent enterprise, one which the trial judge is almost always in the best position to undertake. Here, the facts do not amount to the type of extraordinary case that would require a reversal on the basis of the trial judge's Rule 403 balancing. Accordingly, the district court's decision to admit Correia's reference to the prior arson was not an abuse of discretion.

### III.

Mare's second claim of error is that the district court failed to declare a mistrial after the prosecutor began a line of

-12-

questioning concerning polygraph evidence. "A mistrial is viewed as a last resort, only to be implemented if the taint is ineradicable, that is, only if the trial judge believes that the jury's exposure to the evidence is likely to prove beyond realistic hope of repair." United States v. Dunbar, 553 F.3d 48, 58 (1st Cir. 2009) (internal brackets and quotation marks omitted).

There was no such ineradicable taint here. Whether or not the jury heard the word "polygraph," it did not hear the answer to the question, thanks to Mare's swift objection. And the curative instruction that the court delivered to the jury was an appropriate remedy. We recently upheld a district court's decision to administer a curative instruction but deny a mistrial under similar circumstances in United States v. Rodríguez-Berríos, 573 F.3d 55, 73 (1st Cir. 2009), and we do not find this case to be meaningfully different.

Nevertheless, we add as we did in Rodríguez-Berríos that "it is troubling that a polygraph test was mentioned in the presence of the jury." Id. The prosecutor at trial apparently believed that merely inquiring into the witness's willingness to submit to a polygraph exam was permissible, and we are not faced here with an instance of deliberate misconduct. But even if the government's mistake was in good faith, it should know better by now. This is the latest in a growing line of cases that ought to suggest, if not a per se rule, then at least a code of best

-13-

practice for the virtuous prosecutor: polygraph evidence, even that dealing with matters other than the actual results of an examination, is usually more trouble than it is worth. <u>See, e.g.,</u> <u>id.;</u> <u>United States</u> v. <u>Gardiner</u>, 463 F.3d 445, 468-69 (6th Cir. 2006); <u>United States</u> v. <u>Nelson</u>, 207 F. App'x 291, 292-93 (4th Cir. 2006).

**IV.**

For the foregoing reasons, the defendant's conviction is <u>affirmed</u>.